Maria Martha CHAVEZ, Appellant,

v.

STATE of Texas, Appellee.

No. 11–97–043–CR.

Court of Appeals of Texas,
Eastland.

May 14, 1998.

David H. Stokes, Law Firm of David H. Stokes, Stephenville, for appellant.

John Terrill, District Attorney, Stephenville, for appellee.

Before ARNOT, C.J., and DICKENSON and WRIGHT, JJ.

WRIGHT, Justice.

After the trial court overruled her motion to suppress, Maria Martha Chavez pleaded guilty to the offense of delivery of a controlled substance. The trial court found appellant guilty and assessed her punishment at confinement for 10 years plus a fine of $1,000. We affirm.

In this appeal, we are asked to determine whether the trial court erred when it failed to suppress evidence of a "drug buy" made outside the geographical boundaries of an Interlocal Assistance Agreement by officers employed by parties to the agreement.

The Rural Area Narcotics Task Force (RANTF) was a regional anti-drug abuse task force charged with the responsibility of identifying illicit drug traffickers, identifying illicit drug manufacturing locations, and arresting the offenders. The task force was formed pursuant to a written agreement between Lampasas, Mills, Hamilton, and Comanche Counties.[1] Erath County was not a party to the task force agreement. At the time of the events giving rise to this offense, Jackie Cox, Eddie Flores, Nolan Hicks, and Wesley Alexander, all peace officers, were employed by the City of Lampasas and were assigned to RANTF. Acting upon information received during Comanche County investigations, RANTF expanded its investigation

1. We have not been able to locate this agreement in the record. However, a later agreement between these counties, as well as Erath County, was admitted into evidence. The testimony revealed that the provisions of the later agreement were substantially the same as the agreement in this case.

into adjoining Erath County. On April 19, 1996, RANTF Sergeant Investigator Jackie Cox purchased cocaine from appellant. The transaction took place in Dublin, Erath County, Texas. Later, Sergeant Cox filed a complaint against appellant in Erath County, and an Erath County Justice of the Peace issued an arrest warrant for appellant. A City of Dublin police officer arrested appellant pursuant to that warrant.

Appellant maintained in her motion to suppress, as she does here, that RANTF had no authority to investigate illegal drug activity in Erath County because Erath County was not a party to the RANTF agreement at the time of this investigation. In a single point of error, appellant complains that the trial court erred when it denied the motion. It is important to note that no complaint is made regarding appellant's arrest; the complaint is directed solely at the investigation.

When reviewing a ruling on a motion to suppress, the standard of review is one of abuse of discretion. *Allridge v. State*, 850 S.W.2d 471 (Tex.Cr.App.1991), *cert. den'd*, 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993). At a hearing on a motion to suppress, the trial court is the sole and exclusive trier of fact and the judge of the credibility of the witnesses and the weight to be given to their testimony. *Romero v. State*, 800 S.W.2d 539 (Tex.Cr.App.1990). Absent an abuse of discretion, the trial court's findings will not be disturbed on appeal. *Freeman v. State*, 723 S.W.2d 727, 729 (Tex.Cr.App.1986).

TEX. LOCAL GOV'T CODE ANN. § 362.002 (Vernon 1988) provides, in relevant part, as follows:

(b) A county, municipality, or joint airport may, by resolution or order of its governing body, enter into an agreement with a neighboring municipality, joint airport, or contiguous county to form a mutual aid law enforcement task force to cooperate in criminal investigations and law enforcement. Peace officers employed by counties, municipalities, or joint airports covered by the agreement have only the additional investigative authority throughout the region as set forth in the agreement. The agreement must provide for the compensation of peace officers involved in the activities of the task force.

(c) A law enforcement officer employed by a county, municipality, or joint airport that is covered by the agreement may make an arrest outside the county, municipality, or joint airport in which the officer is employed but within the area covered by the agreement. The law enforcement agencies of the area where the arrest is made shall be notified of the arrest without delay, and the notified agency shall make available the notice of the arrest in the same manner as if the arrest were made by a member of that agency.

Although the actual agreement under which RANTF officers were operating is not before the court, a similar agreement was introduced into evidence. The pertinent part of the agreement is:

5.01 While a law enforcement officer is assigned to the Task Force, the officer shall be empowered to enforce all laws and ordinances applicable in the jurisdiction of the parties to this Agreement. This will include the power to make arrests, and to execute search warrants outside the jurisdiction from which the officer is assigned and within the areas covered by the jurisdictions of the parties to this Agreement. All assigned officers shall have the investigative authority necessary to effectively cooperate in the attainment of the Task Force objective within the area covered by the jurisdiction of the parties to this Agreement.

Prior to the addition of TEX. CODE CRIM. PRO. ANN. art. 14.03(d) (Vernon Supp.1998),[2] Texas case law was at best unsettled on the power of a peace officer to make an arrest outside the officer's home territory. See, e.g., *Angel v. State*, 740 S.W.2d 727 (Tex.Cr.App.1987). Therefore, if at the time of the passage of Section

---

2. Article 14.03(d) was added by Acts 1989, 71st Leg., ch 740, § 1, eff. Aug. 28, 1989, and has since been amended.

362.002 [3] associations under interlocal agreements for law enforcement were to meet the purposes for which they were formed, it would be necessary to empower peace officers to perform certain functions within the area covered by the agreement. It is clear that the quoted portions of Section 362.002 and the quoted portions of the agreement do just that and govern activities of peace officers and law enforcement officers while acting within the geographical boundaries of the parties to the agreement. Neither the statute nor the agreement limit or address activities of officers while acting outside those geographical boundaries. The statute and the agreement merely ensure and make clear that peace officers are to have the same authority within the area covered by the agreement as in the officer's home jurisdiction. It is undisputed that Sergeant Cox was not within the geographical boundaries covered by the agreement when appellant sold him the illegal drugs. Therefore, neither the statute nor the agreement speaks to his activities while in Erath County and outside the geographical boundaries of the participating entities.

Appellant's position is that, because RANTF had no jurisdiction to investigate crime in Erath County, the Texas exclusionary rule would render the evidence inadmissible. TEX. CODE CRIM. PRO. ANN. art. 38.23 (Vernon Pamph. Supp.1998). Article 38.23(a) provides, in relevant part, as follows:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

Even if the RANTF officers had no authority to make the drug buy from appellant in Erath County, the result would not be an automatic exclusion of evidence. Before the evidence is excludable under Article 38.23, there must be a violation of the constitutions or laws of the United States or the State of Texas. The question then becomes, what provision of the constitution or laws, state or federal, did Sergeant Cox and the other RANTF officers violate by following leads to and making a drug buy in Erath County in an effort to find the source of the illegal drug traffic in one of the counties covered by the RANTF agreement? We note that any citizen is able to report illegal activity to law enforcement officials.

In *Dickey v. State*, 816 S.W.2d 832 (Tex. App.—Eastland 1991, no pet'n), a Houston police officer signed, in Galveston County, an affidavit for a search warrant to be executed in Galveston County. The Houston police officer participated with Galveston County officers in the execution of the search warrant. The appellant in *Dickey* claimed that the evidence obtained as a result of the search should have been suppressed because the search warrant was issued to and executed by a peace officer acting outside of his jurisdiction. This court held that the trial court did not err in refusing to suppress the evidence, stating:

The Code of Criminal Procedure does not limit the class of individuals who can file an affidavit for a search warrant. The affidavit may be filed by anyone. Therefore, it makes no difference that the affidavit was signed by the Houston police officer and not by the Galveston County deputy sheriff.

*Dickey v. State*, supra at 834.

█ Here, the information gathered by Sergeant Cox could have been gathered by anyone. Even though he did not have the authority of a peace officer in Erath County, Sergeant Cox did not violate the constitutions or laws of the United States or of the State of Texas, as contemplated by Article 38.23; consequently, the trial court did not err in denying appellant's motion to suppress. The point of error is overruled.

The judgment of the trial court is affirmed.

3. The prior law was codified by Acts 1987, 70th Leg., ch. 149, § 1, eff. Sept. 1, 1987.