Maria Martha CHAVEZ, Appellant,

v.

The STATE of Texas.

No. 1300–98.

Court of Criminal Appeals of Texas, En Banc.

Jan. 12, 2000.

David H. Stokes, Stephenville, for appellant.

John Terrill, Dist. Atty., Stephenville, Matthew Paul, State's Atty., Austin, for State.

## OPINION

McCORMICK, P.J.,, delivered the opinion of the Court, in which MANSFIELD, KELLER, WOMACK and KEASLER, JJ., joined.

Pursuant to a plea-bargain, appellant pled guilty to delivery of cocaine. Appellant appealed the denial of her motion to suppress the cocaine.

The issue in this case is whether our state exclusionary rule in Article 38.23(a), V.A.C.C.P., requires the exclusion of evidence that a Rural Area Narcotics Task Force (RANTF) undercover police officer obtains outside the geographical boundaries set out in an Interlocal Assistance Agreement (the Agreement) authorized by Section 362.002(b) of the Local Government Code. Article 38.23(a), in relevant part, provides:

"No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."

Cox, a police sergeant with the city of Lampasas, was authorized by the Agreement to investigate illegal drug activity in Commanche, Hamilton, Lampasas, and Mills counties which were the parties to the Agreement. The Agreement authorized Cox to exercise all the powers of a police officer "within the area covered by the jurisdiction of the parties to this Agreement."

Cox began to investigate appellant when a confidential informant introduced them in Commanche County which was a party to the Agreement. Cox eventually made an undercover drug buy of the cocaine from appellant in Erath County which was not a party to the Agreement.

Appellant claimed the cocaine should have been suppressed under Article 38.23(a) *solely* because Cox obtained it from her outside the geographical boundaries set out in the Agreement. Appellant alleged no violation of any of *her* rights. The trial court and the Court of Appeals rejected appellant's claim.

The Court of Appeals decided Cox did not breach the Agreement, and, even if he did, Article 38.23(a) did not require exclusion of the evidence primarily because "the information gathered by Sergeant Cox could have been gathered by anyone." We find it unnecessary to decide whether Cox breached the Agreement because we agree with the Court of Appeals that any breach of the Agreement by Cox does not require exclusion of the evidence under Article 38.23(a).

In *Johnson v. State,* this Court decided the "plain" language of Article 38.23(a) incorporated the "attenuation doctrine" because the seizure of the evidence is so far removed from the initial illegality that an "ordinary person would not consider that evidence to have been 'obtained' by that illegality." See *Johnson v. State,* 871 S.W.2d 744, 749–51 (Tex.Cr.App.1994); see also *State v. Daugherty,* 931 S.W.2d 268, 270 (Tex.Cr.App.1996) (discussing *Johnson* ). However, in *State v. Daugherty,* this Court decided the "plain" language of Article 38.23(a) did not incorporate the "inevitable discovery doctrine" because it "*assumes* that the evidence was illegally obtained." See *Daugherty,* 931 S.W.2d at 271 (emphasis in original). *Johnson* and *Daugherty* decided Article 38.23(a) should be construed according to its "plain" language with Article 38.23(a)'s "obtained" given its "ordinary meaning" unless this would lead to "absurd results." See *Daugherty,* 931 S.W.2d at 270.

When this Court last construed Article 38.23(a), it decided the "plain" language of "other person" in Article 38.23(a) made Article 38.23(a) applicable to purely "private action." See *State v. Johnson,* 939 S.W.2d 586, 587–88 (Tex.Cr.App.1996); but see *Johnson,* 939 S.W.2d at 588–93 (McCormick, P.J., dissenting) (Article 38.23(a) intended to apply only to "state action" and intended to incorporate only federal exclusionary rule jurisprudence). *Johnson* also decided Article 38.23(a) should be construed according to its "plain" language unless this would lead to "absurd results." See *Johnson,* 939 S.W.2d at 588. Besides deciding Article 38.23(a) should be construed according to its "plain" language, another thing both *Johnsons* and *Daugherty* have in common is that in each of these cases an invasion of the defendant's rights occurred.

In *Fuller v. State,* this Court did not follow the "plain" language of Article 38.23(a) on the issue of a defendant's standing to complain about a private person illegally seizing evidence from a third party. Compare *Fuller v. State,* 829 S.W.2d 191, 201–02 (Tex.Cr.App.1992) and at 211 (Miller, J., concurring), cert. denied, 508 U.S. 941, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993) (Article 38.23(a) did not require exclusion of the evidence), *with, Fuller,* 829 S.W.2d at 210–11 (Clinton, J., dissenting) ("plain" language of Article 38.23(a) required exclusion of the evidence). *Fuller* decided the defendant had no standing to complain about the seizure of the evidence because no invasion of the defendant's rights occurred when it was seized. See *Fuller,* 829 S.W.2d at 191. Neither of our *Johnson* cases nor *Daugherty* overruled *Fuller* even though a dissenting opinion in our most recent *Johnson* case noted the inconsistent approaches taken by this *Johnson* case and *Fuller* in interpreting Article 38.23(a). See *Johnson,* 939 S.W.2d at 588 fn. 1 (McCormick, P.J., dissenting).

■ Therefore, *Fuller* controls the disposition of this case. Appellant lacks standing to complain about the seizure of the cocaine because Cox did not obtain the cocaine in violation of appellant's rights. See *Fuller,* 829 S.W.2d at 201–02 (one who has not suffered invasion of a legal right does not have standing to bring suit); cf. *House v. State,* 947 S.W.2d 251, 253 (Tex. Cr.App.1997) (defendant has no standing to complain about prosecutor's alleged ethical rule violation that does not violate or prejudice the defendant's rights).

■ The Agreement and the provision of the Local Government Code authorizing it obviously are meant to protect the autonomy of the local governments who are parties to the Agreement. Only these parties to the Agreement have standing to complain about a breach of the Agreement by one of the parties to it. The Agreement confers no third party beneficiary status on appellant to complain about a breach of the Agreement. And, even if someone like appellant had standing to complain about a breach of the Agreement by one of its parties, the contractual remedy would be specific performance of the

Agreement and not exclusion of evidence obtained by police officers acting outside the geographical boundaries set out in the Agreement.

In addition, under both *Johnsons* and *Daugherty*, the "plain" language of Article 38.23(a) does not require exclusion of the cocaine. No "ordinary person" would consider the cocaine to have been "obtained" in violation of the law. See *Daugherty*, 931 S.W.2d at 270 (Article 38.23(a) rejects a strict "but/for" test of causation between the illegality and seizure of the evidence). Any causal relationship between Cox's alleged breach of the Agreement and his acquisition of the cocaine is too remote for Article 38.23(a) to consider the cocaine to have been "obtained" by the "illegality" of Cox's alleged contractual breach of the Agreement. See *Daugherty*, 931 S.W.2d at 270 (ordinary meaning of "obtained" does not extend to remote causal relationships).

Also, under our more recent *Johnson* case, Article 38.23(a) treats "state action" and "private action" the same or on an equal footing. See *Johnson*, 939 S.W.2d at 587–88. Article 38.23(a) would not consider the cocaine to have been "obtained" in violation of the law had Cox acted in a purely private capacity. Therefore, treating "private action" and "state action" equally under *Johnson*, Article 38.23(a) does not consider the cocaine to have been "obtained" in violation of the law in this case.

The judgment of the Court of Appeals is affirmed.

KELLER, J., filed a concurring opinion in which KEASLER, J., joined; PRICE, J., filed a concurring opinion in which MEYERS, J., joined; HOLLAND, J., filed a dissenting opinion in which JOHNSON, J., joined.

KELLER, J., delivered a concurring opinion in which KEASLER, J., joined.

I would hold that, in order for an illegal act to render evidence inadmissible under Texas Code of Criminal Procedure, Article 38.23, that act must be subsequent to and separate from the illegal act that is the subject of the prosecution. I rely upon the rules of statutory construction. A statute must be interpreted in accordance with the plain meaning of its words unless the words are ambiguous or the plain meaning leads to absurd results. *Boykin v. State*, 818 S.W.2d 782, 785–786 & 786 n. 4 (Tex. Crim.App.1991). The language of the statute provides in relevant part:

> No evidence *obtained* by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

Article 38.23(a)(emphasis added).

We discussed the meaning of "obtain" in Article 38.23, in a somewhat different context, in *State v. Mayorga*, 901 S.W.2d 943 (Tex.Crim.App.1995)(plurality opinion). In that case, officers attempted to arrest Mayorga on outstanding warrants, and she resisted. It was later determined that there were no outstanding arrest warrants and the original charges were dropped. Mayorga was, however, charged with resisting arrest. She filed a motion to suppress, claiming that since the arrest was illegal, her statements and the officers' testimony should be suppressed as fruits of that illegality. She relied on Article 38.23. We held that "obtained in violation of the law" contemplates that a crime has been committed, that evidence of the crime exists, and that officers violate the law in attempting to obtain evidence of the previously violated law. *Id.* at 945–946. In order for Article 38.23 to apply, "the officers must act illegally in obtaining *existing* evidence of an offense." *Id.* at 946 (emphasis added.)

When we turn to the rules of statutory construction, we reach the same conclusion. "Obtain," when used as a transitive verb whose object is something that can be possessed, means "to gain or attain posses-

sion or disposal of, usually by some planned action or method,"[1] "to come into possession of; get, acquire, procure, as through an effort or by a request,"[2] or "to come into the possession or enjoyment of (something) by one's own effort, or by request; to procure or gain, as the result of purpose and effort; hence, generally, to acquire, get."[3] All of these definitions denote that the object to be "obtained" is something that already exists. One does not "create" something when one "obtains": obtaining means acquiring, getting, procuring—all of which assume that the object exists before the action that consists of "obtaining."[4]

Because "obtain" does not mean "create" and "obtain" assumes that the thing to be possessed already exists, evidence is not "obtained" in violation of the law when illegal activity creates the evidence. A subsequent illegal action that is separate and discrete from the action that created the evidence is required in order for the evidence to be "obtained" in violation of the law. Given the usage of "obtained" in Article 38.23, the plain language of the statute unambiguously supports the holding that evidence is not obtained in violation of the law by virtue of the fact that a police officer illegally participates in the activity constituting the crime.

Moreover, construing "obtained" to include the creation of evidence by commission of the offense leads to absurd results. We have held that Article 38.23 applies to *all* persons, not just to law enforcement agents. *State v. Johnson*, 939 S.W.2d 586, 588 (Tex.Crim.App.1996). If "obtained" includes "created," then all accomplice testimony would have to be excluded at trial,

since all information possessed by an accomplice would be the result of his own criminal activity.

In the present case, appellant claims that Officer Cox violated the law by participating in an illegal drug buy with appellant, and that evidence of the buy was thus obtained in violation of the law. But since one's status as a police officer is inconsequential for Article 38.23 purposes, whatever we hold regarding admission of Cox's testimony would apply to the testimony of any accomplice. Either all "accomplice" testimony is inadmissible because of Article 38.23, or none is. Article 38.23 does not require exclusion of evidence in such situations.

With these comments, I join the majority opinion.

PRICE, J., delivered a concurring opinion, in which MEYERS, J., joined.

I agree with the majority that appellant lacks standing to argue about an alleged violation of Article 38.23 of the Texas Code of Criminal Procedure on the facts presented. As succinctly stated by Professors George E. Dix and Robert O. Dawson:

... given the number and nature of statutory requirements that might be violated in the acquisition of evidence, reading [Art. 38.23] as applicable without qualification to all "laws" is arguably so absurd that it cannot reflect legislative intention. If the Court of Criminal Appeals is going to regard "laws" as somehow limited, it should explicitly acknowledge this and make clear the criterion for identifying laws not sufficient to invoke the statute.

1. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, Unabridged, 1969, p. 1559.

2. THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE, Second Edition, Unabridged, 1987, p. 1338.

3. THE COMPACT EDITION OF THE OXFORD ENGLISH DICTIONARY, 1971, p. 1968.

4. Webster's does offer a second definition of "obtain" as "to bring about or call into being: effect." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, p. 1559. But this definition refers to the bringing about of a state of affairs rather than the procurement of something to be possessed. The example given in the dictionary is "obtain quiet for their annual meetings." *Id.*

... the fairest reading of the statute is that it must have been intended to permit challenges to evidence on the basis that the evidence was obtained in violation of a "law" that serves to protect individual's personal and property rights from infringement by others, whether those others are acting in official capacities or not. "Laws" serving other functions, then, would not be a sufficient predicate on which to base an article 38.23 objection to prosecution evidence.

40 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE § 4.46 (1995). I take this opportunity to "explicitly acknowledge" just such a position.

In the midst of the Prohibition era, this Court handed down *Welchek v. State,* a case involving the warrantless stop of a suspect and the improper seizure of alcohol by a sheriff and "a number of other gentlemen." *See* 93 Tex.Crim. 271, 274, 247 S.W. 524, 525 (1922). The *Welchek* Court refused to apply the exclusionary rule that was being utilized by other state courts and by the United States Supreme Court, and upheld the trial court's decision to not suppress the evidence regardless of the warrantless search and seizure. *Id.*

In the next legislative session, the Texas Senate proposed bill ("S.B.") 115 as a means to overturn *Welchek,* in that it specifically excluded illegally obtained evidence.[1] *See* 39th Leg., Tex. S.J. 109 (1925). Specifically, S.B. 115 was passed, after a floor amendment, as follows: "[n]o evidence obtained by an officer or other person in violation of any provision of the Constitution or laws of the State of Texas or of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." The bill subsequently passed the Texas House of Representatives without amendment and was signed by the Governor on March 9, 1925.[2] The 1925 Code of Criminal Procedure codified S.B. 115 as article 727a, which became effective on June 19, 1925.[3] Viewing these events *in toto,* it is virtually irrefutable that the Texas Legislature enacted 727a, which is materially identical to today's article 38.23, in order to provide Texas citizens with the protections of the Fourth Amendment's exclusionary rule.[4]

Article 38.23 does expand the Fourth Amendment exclusionary rule in that private citizens, not simply government actors, are estopped from illegally obtaining evidence against a defendant. *See State v. Johnson,* 939 S.W.2d 586, 587–88 (Tex. Crim.App.1996).[5] But the underlying theory of both the exclusionary rule and article 38.23 is the same: to protect a suspect's liberty interests against the overzealousness of others in obtaining evidence to use against them. Thus, unless someone's privacy or property interests are illegally infringed upon in the obtainment of evidence, the core rationale for providing this prophylactic measure is not met and its use is unwarranted. To expand the breadth of 38.23 to any and every violation of Texas "law"—beyond those that affect a defendant's privacy or

---

1. Another bill, S.B. 174 made it a criminal violation to search a defendant without a warrant. Thus, together with S.B. 115, any defendant finding himself in a situation like *Welchek* would be able to have the evidence suppressed.

2. Tex. H.R.J. 795 (1925) and 1925 Tex. Gen. Laws, ch. 49, at 186–87.

3. *See* Robert O. Dawson, *State–Created Exclusionary Rules in Search and Seizure: A Study of the Texas Experience,* 59 Texas L.Rev. 191 (1981).

4. This was the only exclusionary doctrine available to Texas defendants until the United States Supreme Court decided *Mapp v. Ohio,* which required state courts to apply the exclusionary rule under the Fourteenth Amendment. *See* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

5. Our holding in *Johnson* is consistent with the purposes underlying the enactment of 38.23—that is, to preclude private actors as well as government officials from illegally obtaining evidence against a defendant.

property interests—is to ignore the basic premise under which the statute was created and would lead to absurd results.

In the present case the illegality at issue was the possession of cocaine.[6] The "law" in question does not shield a person from having his liberty interests infringed, nor were appellant's privacy or property interests implicated by this criminal possession. Thus, it fails the criterion for finding a 38.23 violation. Were we to hold otherwise, trial courts would be besieged by defendants claiming any and every type of "legal" violation as the predicate to suppress any evidence obtained. No matter how isolated and immaterial the alleged "illegality," defendants could argue that it led to the obtainment of evidence and this would lead to absurd results. Judge Keller's concurrence in this case alludes to just such an absurdity, where it refers to an accomplice's eyewitness testimony. *See Chavez,* ante at 820 (Keller, J., concurring). An accomplice's eyewitness's testimony could arguably be suppressed due to the fact that he "obtained" this evidence through an illegal act—helping the defendant commit the crime at issue. Undoubtedly, he broke the "law" in committing the criminal act and thus, under appellant's argument, he violated 38.23. However, this "illegality" in no way implicated the defendant's privacy rights, nor casts any doubt on the veracity of the accomplice's testimony. Suppressing this confession would be an unintended and absurd result, and such a result cannot be allowed. *See Boykin v. State,* 818 S.W.2d 782, 785–86 & 786 n. 4 (Tex.Crim.App.1991) (a statute must be interpreted in accordance with the plain meaning of its words unless the words are ambiguous or the plain meaning leads to absurd results).

A bright-line rule is needed, therefore, and we should draw it at the point where a defendant's personal or property rights are illegally violated in the obtainment of evidence against him. *See Fuller v. State,* 829 S.W.2d 191, 202 (Tex.Crim.App.1992) (when the predecessor of article 38.23(a) was first enacted, this Court rejected similar contentions regarding general "laws", holding that "[t]he right to complain because of an illegal search and seizure is a privilege personal to the wronged or injured party, and is not available to anyone else.") (citations omitted). Such a ruling upholds the rationale and spirit of the statute, while still proscribing its potential abuse.

For the foregoing reasons, I concur only in the judgment of the Court.

HOLLAND, J., delivered a dissenting opinion in which JOHNSON, J., joined.

The majority opinion focuses on whether the exclusionary rule, Article 38.23 of the Code of Criminal Procedure, bars admission of cocaine obtained by the State from appellant into evidence. The majority relies on *Fuller v. State,* 829 S.W.2d 191, 201–01 (Tex.Crim.App.1992), and it concludes that appellant lacks standing to argue the cocaine should be excluded as the product of an illegal search under Article 38.23. The application of Article 38.23, however, is secondary to the primary issue before this Court.

In this case, we have been asked to decide whether the police violated the law by acquiring cocaine from appellant. Appellant, Maria Martha Chavez, was charged with delivery of cocaine in an amount of one gram or more but less than four grams, a second degree felony. *See* TEX. HEALTH & SAFETY CODE ANN.

---

6. The majority opinion determines that the "illegality" in this case is the violation of the RANTF agreement. I disagree. The RANTF agreement is not a "provision of the Constitution or laws of the State of Texas, or the Constitution or laws of the United States of America," thus it is not encompassed by Art. 38.23. I believe that the illegality is the possession of cocaine. I assume without deciding that an officer acting outside of his jurisdiction is to be considered a private citizen, not a law enforcement official. Thus, purchasing and possessing cocaine would be a violation of Texas law, specifically TEX. HEALTH & SAFETY CODE ANN. § 481.112(c) (Vernon 1994).

§ 481.112(c) (1994). Appellant pled guilty pursuant to a plea bargain agreement, and the trial court sentenced her to ten years confinement and a $1000 fine. The trial court granted appellant permission to appeal her written, pre-trial motion to suppress evidence. *See* TEX.R.APP. P. 25.2. The Eleventh Court of Appeals concluded that the trial court did not err in admitting the cocaine into evidence. *See Chavez v. State*, 970 S.W.2d 679 (Tex.App.—Eastland 1998).

The Eastland Court, however, never reached the issue of application of Article 38.23.

> Before the evidence is excludable under Article 38.23, there must be a violation of the constitutions or laws of the United States or the State of Texas. The question then becomes, what provision of the constitution or laws, state or federal, did Sergeant Cox and the other RANTF officers violate by following leads to and making a drug buy in Erath County....

*Id.*, at 681. The Court of Appeals concluded Cox did not violate the constitution or laws of the United States or the State of Texas during his investigation of appellant in Erath County. *Id.*

This Court granted discretionary review to determine whether the State's investigating officer was outside his legal jurisdiction when he investigated appellant and, ultimately, whether the Eastland Court erred in affirming the trial court's denial of appellant's motion to suppress. I would reverse the judgment of the Eastland Court of Appeals and remand this cause for that court to apply Article 38.23 to determine whether the evidence obtained by Cox was excludable under Article 38.23.

## I.

For this Court to resolve the issue before it, a review of the factual history of this cause is helpful. At the time of appellant's arrest, Jackie Cox was a police officer employed by the City of Lampasas. He was also a member of the Rural Area Narcotics Task Force (RANTF), a region-al anti-drug abuse task force comprised of Comanche, Hamilton, Lampasas, and Mills Counties, and the City of Lampasas. The RANTF was created pursuant to an Interlocal Assistance Agreement (Agreement) authorized by Section 362.002(b) of the Local Government Code. According to the agreement, the officers of RANTF were authorized to investigate and make cases against suspected drug offenders. The Agreement provided the following guidelines:

> While a law enforcement officer is assigned to the Task Force, the officer shall be empowered to enforce all laws and ordinances applicable in the jurisdiction of the parties to this Agreement. This will include the power to make arrests, and to execute search warrants outside the jurisdiction from which the officer is assigned and within the areas covered by the jurisdictions of the parties to this Agreement. All assigned officers shall have the investigative authority necessary to effectively cooperate in the attainment of the Task Force objective within the area covered by the jurisdiction of the parties to this Agreement.

At the hearing on appellant's motion to suppress, Cox testified that he began investigating appellant when a confidential informant introduced them in Comanche County. The informant told Cox that appellant sold cocaine in the Erath County area, primarily in the city of Dublin.

Prior to going to appellant's home in Dublin to make a "buy" of cocaine from appellant, Cox contacted a lieutenant from the Dublin Police Department "just to advise [him] what we're doing." Cox testified the Dublin lieutenant consented to the action. After speaking with the Dublin lieutenant, Cox then contacted Lieutenant George Mayben, the D.P.S. narcotics officer in charge of the RANTF operation. He told Mayben that he wanted to go into Dublin and "specifically, that [he was] going to be dealing with [appellant]." May-

ben testified that he authorized Cox to carry his investigation of appellant into Erath County. Cox testified that he believed he had the permission of both Lieutenant Mayben and the Dublin Police Department to continue his investigation of appellant in Dublin.

Cox arranged for Officers Flores and Hicks of the RANTF to be the surveillance team when he went to appellant's home to make the "buy." The informant accompanied Cox to appellant's home. When they arrived, Cox told appellant he wanted to purchase three grams of cocaine. Appellant told him the charge would be $260. Cox paid appellant the money, and appellant handed Cox a container holding the cocaine. After returning to his car, Cox immediately field tested it and confirmed the substance was cocaine. Cox turned the cocaine over to Lieutenant Wesley Anderson to be stored in the RANTF evidence locker pending its shipment to the DPS labs for testing. Cox testified he never intended to participate as an accomplice or as a principal to the commission of a drug offense. Instead, his only goal was to assemble sufficient evidence to justify appellant's arrest.

The evidence secured by Cox ultimately led to appellant's arrest for the instant offense. The cocaine and Cox's offense report were turned over to the City of Dublin and the District Attorney for Erath County. The Dublin police department subsequently obtained an arrest warrant based on this information. The arrest warrant was executed by Officer Debbie Ware of the Dublin Police Department. Chief Johnson of the Dublin Police Department testified that no members of the RANTF were present at the time of appellant's arrest.

Appellant moved for the trial court to suppress the evidence "as a result of the State's illegal investigation of the Defendant." She asserted that Cox "was outside his legal jurisdiction when he investigated the Defendant." Appellant argued in her motion that neither statutory law nor the interservice agreement which created the RANTF conferred authority upon Cox to carry on an investigation of appellant within Erath County. Consequently, any evidence seized as a result of this illegal investigation was excludable under Article 38.23(a) of the Code of Criminal Procedure.[1] Alternatively, appellant claimed that when Cox conducted his investigation outside his jurisdiction, "his actions of buying controlled substances from [appellant] constituted criminal conduct rendering Cox a party to the alleged offense." Hence, Cox became an accomplice witness, and his actions constituted entrapment. The trial court denied appellant's motion to suppress the evidence.

On direct appeal, appellant argued that the trial court erred in denying her motion to suppress because the evidence seized stemmed from an illegal investigation. She claimed that the "State's investigating officers, including Jackie Cox of the Rural Area Narcotics Task Force (RANTF), were outside their legal jurisdiction when they investigated [her]." The RANTF officers were authorized to conduct investigations within those counties that were signatories to the interservice agreement. Because Erath County, where the investigation and arrest occurred, was not a participating county, appellant insisted that the RANTF officers "exceeded their authority and violated the law," requiring the evidence to be excluded under Article 38.23(a).

The Eastland Court of Appeals disagreed with appellant. *See Chavez v. State,* 970 S.W.2d at 679. The Eastland Court observed that the Interlocal Service

---

1. Tex.Code Crim. Proc. art. 38.23(a) provides, in part:

   No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

Agreement, which created the RANTF, "merely ensure[d] and ma[d]e clear that [the] peace officers and law enforcement officers [had] the same authority within the area covered by the agreement as in the officer's home jurisdiction." *Id.* at 681. The court concluded that because neither the statute authorizing the Interlocal Assistance Agreement nor the agreement itself limited or addressed the activities of officers while acting outside the Agreement's geographical boundaries, such activities could not result in a violation of the Agreement. *See id.*

The Eastland Court also determined that Cox committed no other violations of the law during his investigation of appellant in Erath County. The court observed that because "any citizen [may] report illegal activity to law enforcement officials ... [the] information gathered by Cox could have been gathered by anyone." *Id.* From this, the court concluded that Cox violated neither the constitution nor the laws of this State nor of the United States. The Court also concluded that the officers were acting as private citizens. As a result, the court decided the evidence was not excludable under Art. 38.23(a), and it affirmed the judgment of the trial court. *See id.*

Appellant now asks this Court to review the legality of Cox's actions during his investigation of her. In her petition to this Court, appellant argues that Cox's actions in conducting his investigation of her in Erath County were outside his legal jurisdiction, and she claims that the court of appeals erred in holding the RANTF officers did not violate the terms of the agreement by acting outside the boundaries of the member counties. She argues that Cox had no authority as a peace officer in Erath County when he investigated her in Erath County. Appellant insists that the court of appeals's reasoning is flawed with regard to their conclusion that Cox did not

violate any laws because private citizens may report illegal activity, and she claims that any private citizen who conducted an investigation comparable to Cox and obtained the same evidence would not be merely observing the commission of a crime, but would be committing a crime. That is, the citizen, by purchasing and possessing the controlled substance, would be committing a criminal offense. Appellant also argues, subordinate to her claim that Cox acted illegally in acquiring the cocaine from her, that the court of appeals should have applied Article 38.23(a) and suppressed the fruits of Cox's investigation of her.

## II.

I believe Cox's actions exceeded the jurisdiction of his office. The "jurisdiction" of a peace officer is defined as a restriction on the "geographic scope of a peace officer's power, rights and authority." *Angel v. State,* 740 S.W.2d 727, 734 (Tex.Crim. App.1987). The jurisdiction of this State's peace officers is set by a combination of common law and statutory law.

Cox was a police officer for the city of Lampasas. A police officer has the "the powers, rights, duties and jurisdiction granted to or imposed on a peace officer by the Code of Criminal Procedure." TEX. LOCAL GOV'T CODE ANN. § 341.001(e)(1). A city police officer is a peace officer, as that term is defined by statute. *See* TEX.CODE CRIM. PROC. ANN. art. 2.12(3).[2] "It is the duty of every peace officer to preserve the peace within the officer's jurisdiction." TEX.CODE CRIM. PROC. ANN. art. 2.13. To effect this purpose, peace officers are authorized to "use all lawful means." *Id.* The peace officer "shall give notice to some magistrate of all offenses committed within his jurisdiction, ... ." *Id.*

The common law limits a peace officer's authority to his own jurisdiction.[3] That

---

**2.** Article 2.12(3) sets out that peace officers include "marshals or police officers of an incorporated city, town or village."

**3.** The provisions of the Code of Criminal Procedure restrict the authority of sheriffs to their own county. "Each sheriff shall be a conservator of the peace in his county, and

jurisdiction is set by the geographical boundaries of his own county. This Court applied this interpretation to sections 341.001(e)(1) and 341.021(e)'s predecessor statutes, Articles 998 and 999 of the Revised Civil Statutes.[4] In *Angel v. State,* we addressed the propriety of the defendant's arrest by Tomball City police officers for a traffic offense committed outside the city limits of Tomball but within Harris County. 740 S.W.2d at 728. Overruling prior case law which limited a city police officer's jurisdiction to the boundaries of the city, we concluded "Articles 998 and 999 grant city marshals and city police officers county-wide jurisdiction to arrest offenders." *Id.* at 736. (overruling *Weeks v. State,* 132 Tex.Crim. 524, 106 S.W.2d 275, 276 (1937)).[5] Hence, we determined the Tomball City Police acted within its jurisdiction because "Tomball is within Harris County." *Id.*

This interpretation is also consistent with the rule at common law limiting a police officer's power to his own jurisdiction. Since the turn of the century, it has been a principle of common law that "a peace officer is a peace officer only while he is within his jurisdiction and when he leaves that jurisdiction, he cannot perform the functions of his office." Gerald S. Reamy & J. Daniel Harkins, *Warrantless Arrest Jurisdiction in Texas: An Analysis and A Proposal,* 19 ST. MARY'S L.J. 857, 877–78 (1988).[6] These functions include not only the power to make an arrest, but also the authority to investigate criminal activity.

Until now, this Court has not specifically addressed the extent of a peace officer's power to conduct an investigation outside of his or her home county. The Attorney General, however, has issued an opinion on this subject.[7] The County Attorney of

shall arrest all offenders against the laws of the State, in his view or hearing, and take them before the proper court for examination or trial." TEX.CODE CRIM. PROC. ANN. art. 2.17. There are no similar provisions for the other law enforcement officers of this state who are also designated as peace officers, like sheriffs and their deputies, by Article 2.13. It would be absurd for this Court to presume the Legislature intended to restrict the geographical limits of the authority of a sheriff and not that of his deputies, or to presume the Legislature intended to restrict the geographical limits of the authority of a sheriff and his deputies, and not that of the other peace officers of this State. *See Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991).

4. *See Angel,* 740 S.W.2d at 734; *see also* TEX. REV.CIV. STAT. ANN. art. 998 & 999, *repealed by* Act of May 21, 1987, 70 th Leg., R.S., ch. 149, § 49(1), 1987 Tex. Gen. Laws 707,1306. Concurrent with the repeal of Articles 998 and 999, and through the enactment of the same law, the former rule was codified in Sections 341.001(e)(1) and 341.021(e) of the Local Government Code. *See* TEX. LOCAL GOV'T.CODE ANN. § 341.001(e)(1) & 341.021(e), Act of May 21, 1987, 70 th Leg., R.S., ch. 149, § 1.1987 Tex. Gen. Laws 707, 1136–1138. The Legislature has made no substantive changes to the power and jurisdiction afforded city police officers and marshals.

5. Although the holding in *Angel* was a plurality, we later reaffirmed our holding in *Perkins*

*v. State,* 812 S.W.2d 326 (Tex.Crim.App.1991). In that case, we relied on *Angel* to hold that municipal officers have county-wide jurisdiction. *See id.* at 327–29. Several courts of appeals have also relied on *Angel* as authority for holding that municipal officers and city police officers have county-wide jurisdiction. *See* 40 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 9.14, at 380 (1995 & Supp.1999).

6. As early as 1902, this Court determined "[a] person may be a peace officer in one section of the State and not in another, but is simply a local peace officer; and while he is in his bailiwick he is a peace officer, but when he leaves there and goes to some other section he cannot perform the functions of his office, and he has no more authority than any other private citizen." *Ray v. State,* 44 Tex.Cr.R. 158, 159, 70 S.W. 23, 24 (Tex.Crim.App. 1902). *See also Ransom v. State,* 73 Tex.Cr.R. 442, 444, 165 S.W. 932, 933 (Tex.Crim.App. 1914) (where this Court concluded that peace officers can only exercise the unlimited right to carry arms within "the limits of the prescribed territory where they are peace officers").

7. Even though the opinions of the Attorney General are not binding on this Court or other appellate courts, they are persuasive. *See Ex Parte Schroeter,* 958 S.W.2d 811, 812 n. 2 (Tex.Crim.App.1997).

Midland County asked the Attorney General whether the Sheriff of Midland County was "entitled to conduct his law enforcement operations anywhere in the State of Texas as well as in other states." The activities involved "reverse sting" operations "in which law enforcement agents [would] pose as drug dealers and agree to sell confiscated narcotics to willing buyers."

The Attorney General concluded that the Midland County Sheriff's authority to investigate and conduct reverse sting operations did not extend throughout the State of Texas and into other states. *See* Op. Tex. Att'y Gen. No. DM–77 (1992). In his opinion, the Attorney General reviewed the text of Article 14.03(d) of the Code of Criminal Procedure. *See id.* Article 14.03(d) extended the authority of local peace officers to make arrests outside their home counties but only for offenses which were committed within their presence or view, and only where the peace officers bring in the local authorities as soon as practicable. The Attorney General contrasted this grant of authority with the grant of power to the Texas Rangers under Section 411.022(a) of the Government Code. Section 411.022(a) specifies the Rangers have the same powers as the sheriffs of the State, except that the Rangers "may make arrests, [and] execute process in a criminal case in any county." TEX. GOV'T CODE ANN. § 411.022(a). By reading these statutes together, the Attorney General concluded that the Legislature intended to limit the authority of local peace officers to conduct their duties solely within their home counties—the only exception being the special power to arrest an offender outside the officer's home

county when the offender commits an offense in the officer's presence or view.

The Attorney General also reviewed Chapter 362 of the Local Government Code, where the Legislature provided for peace officers to be able to operate outside their home counties. This chapter allows for counties and incorporated cities to specifically offer the assistance of its peace officers to other counties or incorporated cities. The Attorney General noted that it also provides for cities and counties to enter into cooperative agreements whereby they can band together and agree to permit certain specified officers to work throughout the boundaries of all the combined cities and counties. In the Attorney General's opinion, the Legislature's decision to adopt Chapter 362 indicated that, without the provisions of Chapter 362, the peace officers of one county or city could not carry out investigative functions outside their home county.[8] The presence of Chapter 362 made clear "that a sheriff does not have general authority to conduct an investigation outside his county." Op. Tex. Att'y Gen. No. DM–77 (1992).

Based on the common law of this state, the plain language of Section 341.001(e)(1) of the Local Government Code and Article 2.17 of the Code of Criminal Procedure, the contrasting provisions of Section 411.022(a) of the Government Code and Article 14.03(d) of the Code of Criminal Procedure, and the Legislature's decision to adopt Chapter 362 of the Local Government Code, I would hold a peace officer's authority to exercise his or her powers of office, whether making an arrest or investigating criminal activity, is limited to the boundaries of his or her jurisdiction.[9] A

8. As mentioned above, an officer would be permitted under Article 14.03(d) to make an arrest for an offense when it is committed within his or her presence or view in the other county or city.

9. Several courts of appeals have reached the same conclusion. *See Britt v. State*, 768 S.W.2d 514, 515–16 (Tex.App.-Fort Worth 1989, no pet.)(Section 341.021(e) gave city

police officers county-wide jurisdiction to conduct investigations, thus execution of a search warrant by Arlington police officers outside of the city limits of Arlington but within the boundaries of Tarrant County was proper.); *Bacon v. State*, 762 S.W.2d 653, 655–56 (Tex.App.-Houston [14th Dist.] 1988, pet. ref'd)(Section 341.021(e) gave city police officers county-wide jurisdiction to conduct investigations, thus a controlled purchase of

city police officer's power to investigate crimes, make arrests, and notify magistrates of the occurrence of criminal offenses extends only as far as his or her jurisdiction.[10] Therefore, I would conclude Cox had no authority to investigate appellant in the City of Dublin because Erath County was outside Cox's jurisdiction as a city police officer for Lampassas, unless a statutory exception applies in this case.

### III.

There are two statutory exceptions to this rule. First, as noted above, Article 14.03(d) of the Code of Criminal Procedure permits officers to make arrests without warrants outside of their jurisdiction when a person commits "an offense within the officer's presence or view, if the offense is a felony, a violation of Title 9, Chapter 42, Penal Code, a breach of the peace, or an offense under Section 49.02, Penal Code." TEX.CODE CRIM. PROC. ANN. art. 14.03(d). An officer need not be within his own county in order to arrest for one of the enumerated offenses when it is committed within his view. *See* DIX AND DAWSON, § 9.14, at 381. Because appellant complains of Officer's Cox's investigation of her, not her arrest, Article 14.03(d)'s exception does not apply in this case.

The second exception, which is the provision for Law Enforcement Assistance Agreements in Chapter 362 of the Local Government Code, does arise in the instant case. Section 362.002(b) & (c) provides:

(b) A county, municipality, or joint airport may, by resolution or order of its governing body, enter into an agreement with a neighboring municipality, joint airport, or contiguous county to form a

mutual aid law enforcement task force to cooperate in criminal investigations and law enforcement. Peace officers employed by counties, municipalities, or joint airports covered by the agreement have the additional investigative authority throughout the region as set forth in the agreement. The agreement must provide for the compensation of peace officers involved in the activities of the task force.

(c) A law enforcement officer employed by a county, municipality, or joint airport that is covered by the agreement may make an arrest outside the county municipality, or joint airport in which the officer is employed but within the area covered by the agreement.

The plain language[11] of Section 362.002 indicates that the county-wide limits of a peace officer's jurisdiction can be expanded to include areas specified within an interservice agreement. The converse of this, in light of Sections 341.001(e)(1) and 341.021(e) (which were enacted contemporaneously with Section 362.002), is that a peace officer whose jurisdiction is not covered under the terms of a Section 362.002 agreement has no jurisdiction to conduct criminal investigations outside the boundaries of his home county.

Turning to the instant case, Officer Cox's jurisdiction as a peace officer to conduct investigations and make arrests was expanded under Section 362.002 to include Comanche, Hamilton, Mills and Lampasas Counties. Under the specific terms of the interservice agreement, Cox had "the investigative authority necessary to effectively cooperate in the attainment of the Task Force objective within the area covered by the jurisdiction of the parties

---

controlled substances by Freeport police officers was proper.); *Landrum v. State,* 751 S.W.2d 530, 531–32 (Tex.App.-Dallas 1988, pet. ref'd)(Section 341.021(e) granted DeSoto police officers the "jurisdiction to conduct investigations and arrest offenders in the prevention and suppression of crime anywhere within the county, including Dallas, Texas.").

**10.** The sole exception to this rule, allowing for making arrests for offenses committed within the view or presence of the officer, is set out in Article 14.03(d).

**11.** When the meaning of the text of a statute should have been plain to the legislators who voted on it, "we ordinarily give effect to that meaning." *Boykin,* 818 S.W.2d at 785.

to this Agreement." This agreement, however, did not include the city of Dublin or Erath County where Officer Cox purchased three grams of cocaine from appellant.

Having the permission of the supervising officer of the RANTF and the blessings of a lieutenant of the Dublin Police Department does not alter the limits of Cox's jurisdiction under statutory law or common law. If a verbal grant of permission by an Erath County law officer could bring members of the RANTF into Erath County to conduct a criminal investigation, then there would have been no reason for the City of Dublin and for Erath County to formally join the RANTF three months after appellant's arrest in this case.[12] Because Cox acted outside the boundaries of the interservice agreement, I would conclude he lacked jurisdiction to conduct an investigation of appellant anywhere in Erath County. Because Cox left the borders of the RANTF to carry out his investigation of appellant, I would conclude he was no longer an authorized peace officer engaging in the lawful performance of his duties.

## IV.

Since Cox acted outside of his authorized jurisdiction, I will next discuss whether the actions of Officer Cox during his investigation of appellant invoked the protections of Article 38.23. The Eastland Court concluded that Article 38.23(a) was not invoked because it believed Cox did not violate any laws. That is, the court of appeals observed that because a private citizen has the ability to observe and report criminal activity to authorities, Cox did not violate any laws even if he was acting outside of his jurisdiction. The Eastland Court concluded there was no violation of the laws or of the Interservice

Agreement, and Article 38.23 did not apply.

I find the Eastland Court's characterization of Cox's investigation of appellant as nothing more than the actions of a private citizen observing and reporting criminal activity to the local authorities to be disingenuous. During the hearing on the motion to suppress, Cox testified that he pursued his investigation of appellant as an undercover agent for the RANTF. Prior to making the "buy" from appellant in Erath County, Cox sought the approval of his supervisor and the local police authorities. He was accompanied by several other RANTF officers who acted as surveillance and support, and he immediately gave the evidence obtained from appellant to the RANTF supervisor in charge of storing evidence.

These were not the actions of a private citizen who merely observed appellant commit a criminal offense and then reported it. Nor was Cox acting as a police officer who chose to leave his badge behind and conduct a surveillance of criminal activity on his own personal time. Instead, Cox, acting as an undercover RANTF officer, initiated the transaction which led to appellant's delivery of cocaine to him. Because Cox left the boundaries of the RANTF to conduct the "buy" of cocaine from appellant, Cox violated the terms of the interservice agreement, which created the RANTF, and the common law of this State. Cox acted without the lawful authority of a peace officer when he bought cocaine from appellant in Erath County.

Knowing that Cox did not have the authority to act as a member of the RANTF when he purchased cocaine from appellant, however, does not resolve the question of whether Cox violated the law in obtaining the cocaine admitted into evidence against appellant. Article 38.23(a) prohibits only the admission of evidence obtained in vio-

12. David Johnson, chief of police of the Dublin Police Department, testified at the hearing on the motion to suppress that Erath County and the City of Dublin were not members of the Interlocal Service Agreement at the time of appellant's arrest, but they joined the RANTF in September of 1996.

lation of the law and may not be invoked for statutory violations unrelated to the purpose of the exclusionary rule. *See Roy v. State,* 608 S.W.2d 645, 651–52 (Tex. Crim.App.1980).

Chapter 481 of the Texas Health and Safety Code sets out Texas's Controlled Substances Act. Section 481.115(b) of the Act states that it is a felony of the second degree to possess cocaine in an amount less than 28 grams. The Act, however, exempts police officers from violating the Act when they act within their official capacities. Section 481.184(c) states "this chapter does not impose a liability on an authorized state, county, or municipal officer engaged in the lawful performance of the officer's duties." I believe that Section 481.184(c) means peace officers cannot be prosecuted for buying or selling drugs if they are doing so in their official capacity as peace officers in order to conduct lawful undercover sting operations. The Texarkana Court of Appeals reached a similar conclusion in *Leos v. State,* 847 S.W.2d 665 (Tex.App.-Texarkana 1993), *reversed and remanded on other grounds, Leos v. State,* 883 S.W.2d 209 (Tex.Crim.App.1994). In *Leos,* the Texarkana Court decided that two undercover police officers, who delivered and sold to appellant a large quantity of marihuana, did not violate the Controlled Substances Act. The Texarkana Court cited Section 481.184(c) and concluded the officers were acting in the line of duty. Therefore, their actions of possessing and selling the marihuana to the defendant fell under the exception to the proscriptions of the Controlled Substances Act. *See Leos,* 847 S.W.2d at 667.

As I determined above, however, Cox was not an authorized peace officer engaging in the lawful performance of his duties when he purchased the cocaine from appellant. Cox was clearly outside the boundaries of his jurisdiction as a peace officer,

and he was not lawfully authorized to investigate suspected criminal activity as an undercover RANTF agent when he ventured out of the territory specified by the RANTF agreement. Section 481.184(c) only exempts an *"authorized* state, county, or municipal officer engaged in the lawful performance" of his duties when engaging in the undercover purchase of a controlled substance. Therefore, I would conclude Cox was not exempted from the provisions of the Controlled Substances Act when he purchased the cocaine from appellant in Erath County.[13]

## V.

Neither the majority opinion, nor the concurring opinions, confront the issue of the legality of Cox's investigation of appellant. They instead leap forward to discuss why they believe the exclusionary rule does not apply to the actions of Officer Cox. From this, I presume that both the majority opinion and the concurring opinions agree that Cox was acting outside his proper jurisdictional limits and, therefore, was not exempt from the provisions of the Controlled Substances Act at the time he purchased cocaine from appellant.

I do, however, disagree with the majority opinion and the concurring opinions' application of Article 38.23 to the admission of the cocaine into evidence. The majority concludes that appellant lacked standing to argue that Article 38.23 excluded admission of the cocaine into evidence against her. Relying upon this Court's decision in *Fuller v. State,* the majority states that appellant was not a party to the RANTF agreement and, therefore, lacked standing to complain of a violation of that agreement by Cox. *Ante,* at 819–20. But appellant did not argue the cocaine was inadmissible because Cox vio-

---

13. We neither condemn nor condone Officer Cox's actions in the instant case. The wisdom of such an extra-judicial investigation is not the concern of this Court. That is a matter for the respective police and local governmental units to resolve amongst themselves. In a similar vein, whether the actions of Officer Cox expose him to civil or criminal liability or warrant official sanctions are also not issues before us in the instant case.

lated the conditions of the RANTF agreement.

Instead, appellant complained about Cox's illegal acquisition of the cocaine from her, which she argued was a violation of the Controlled Substances Act. As I establish above, Cox did not have authority to carry out his investigation of appellant in Erath County because he violated the common law, the Code of Criminal Procedure, as well as the terms of the interservice agreement which created the RANTF. Once it was established that Cox was not authorized to lawfully perform his duties as a peace officer in Erath County, then the waiver under Section 481.184(c) of the Controlled Substances Act did not apply to him.

Moreover, I believe that the majority's reliance upon *Fuller v. State* is misplaced. *Fuller v. State* is factually distinguishable from the instant case. In *Fuller*, the defendant complained of the admission of a tape seized from a third person into evidence. The defendant argued that it was error to admit the tape recording into evidence because the defendant had made the tape and given it to another inmate, a Ms. Hall. A third inmate stole the tape from Ms. Hall and turned it over to the jail authorities. The defendant claimed that the tape was illegally obtained by the state and excludable under Article 38.23. This Court concluded that the defendant lacked standing to complain of the seizure of the videotape.

In *Fuller*, this Court relied on the "fundamental rule of law that only the person whose primary legal right has been breached may seek redress for an injury. Standing must consist of some interest peculiar to the person individually and not as a member of the general public." *Fuller*, 829 S.W.2d at 201 (citing *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex.1984) and *Nobles*

*v. Marcus*, 533 S.W.2d 923, 927 (Tex. 1976)). Because the tape was not seized from the defendant, the "justiciable injury suffered as a direct and immediate result" of the taking of the tape was not the defendant's injury. The victim of the injury, if any, was Brenda Hall. This Court concluded that the defendant was "without standing to challenge such illegality in the context of a criminal prosecution." *Fuller*, 829 S.W.2d at 202.

In contrast, in the instant case, Cox acquired the cocaine from appellant, not from a third party. Appellant complains of the illegal act by which Cox acquired the cocaine *from her*. Therefore, she has standing to complain of the actions of Cox, and the majority errs by concluding that *Fuller* controls disposition of the instant case.

The majority also contends that the causal connection between Cox's violation of the RANTF agreement and the acquisition of the cocaine from appellant are "too remote" for Article 38.23 to apply to Cox's acquisition. *Ante*, at 820. This conclusion conflicts with the evidence at trial. When Cox went into Erath County to conduct his investigation of appellant make his "buy" from her, he was in continuous violation of the RANTF agreement, as well as common and statutory law. The RANTF agreement only permitted Cox to conduct investigations within the confines of the four member counties. When he took his investigation of appellant outside the RANTF boundaries, that investigation continued outside those boundaries throughout the duration of his investigative actions in Erath County. Cox lacked authority to engage in the lawful performance of his duties throughout the entire investigation of appellant in Erath County.[14] Additionally, the protections of Sec-

---

14. Cox's actions can be viewed as analogous to the actions of a defendant who engages in a continuing offense. Once initiated, a continuing offense is not committed by an overt act but by omission or neglect and continues as long as the neglect or omission continues.

*See Ex parte Beeth*, 142 Tex.Crim. 511, 154 S.W.2d 484, 485 (1941). An example of a continuing offense is criminal non-support. *See Belcher v. State*, 962 S.W.2d 653, 656 (Tex.App.-Austin 1998). Another example is engaging in organized criminal activity. *See*

tion 481.184(c) did not cloak any of his actions in Erath County. *See infra* Part IV. There was no attenuation between Cox's violation of the terms of the RANTF agreement and his acquisition of the cocaine from appellant.

Lastly, the majority argues that Article 38.23 does not apply because appellant failed to show that the State violated her rights in obtaining the cocaine from her. The majority explains that the "plain language" of Article 38.23 supports the conclusion that only a violation of the rights of a defendant can invoke the protections of the exclusionary rule. In his concurring opinion, Judge Price expresses the same argument. But neither the majority opinion, nor Judge Price in his concurring opinion, cite any authority for this interpretation of Article 38.23. Moreover, I believe the plain language of Article 38.23 leads to an entirely different conclusion.

Statutes should be interpreted in accordance with the plain meaning of their words unless the words are ambiguous or the plain meaning leads to absurd results. *See Boykin v. State,* 818 S.W.2d 782, 785–86 & 786 n. 4 (Tex.Crim.App.1991). Article 38.23 speaks only of barring the admission of evidence which has been obtained "in violation of any provisions of the Constitution or laws of the state of Texas, or of the Constitution or laws of the Untied States." If the Legislature had meant for Article 38.23 to apply only to the acquisition of evidence through the violation of an accused's rights, it could have used that precise language. Instead, the statute proscribes the admission of evidence obtained in violation of *the law.* This includes violations of the statutes of this state or the United States and is not limited only to the violations of the constitutional rights of those who assert the protection of Article 38.23.

*Whatley v. State,* 946 S.W.2d 73, 78 n. 4 (Tex.Crim.App.1997); *Barnes v. State,* 824 S.W.2d 560, 562 (Tex.Crim.App.1991). In the instant cause, once Cox lost the mantle of his

Judge Keller's concurring opinion joins the majority, but also states that "in order for an illegal act to render evidence inadmissible under Texas Code of Criminal Procedure, Article 38.23, that act must be subsequent to and separate from the illegal act that is the subject of the prosecution." The concurrence asserts that the evidence may not be obtained contemporaneously with the illegal act, which is the subject of the prosecution. Judge Keller's opinion states that the evidence must already exist prior to the illegal action by which it is obtained. In the instant cause, the cocaine was illegally obtained by Cox during appellant's commission of the act for which she is being prosecuted. Therefore, Judge Keller's concurring opinion concludes that appellant is barred from asserting the protection of Article 38.23.

Judge Keller's concurring opinion relies on *State v. Mayorga,* 901 S.W.2d 943 (Tex. Crim.App.1995) for support, and it concludes that *Mayorga* controls the instant case. *Mayorga* concluded that Article 38.23 applied when a crime had been committed prior to the act of obtaining the evidence, and that the evidence from that crime existed prior to when it was obtained. *Mayorga,* however, was only a plurality opinion of this Court and is not binding precedent on this Court. *See Hernandez v. State,* 988 S.W.2d 770, 772 (Tex. Crim.App.1999); *Pearson v. State,* 994 S.W.2d 176, 177 n. 3 (Tex.Crim.App.1999); *State v. Hardy,* 963 S.W.2d 516, 519 (Tex. Crim.App.1997).

In addition, the plurality opinion in *Mayorga* relied upon decisions that did not support its ultimate conclusion. For example, the *Mayorga* plurality relied on this Court's decision in *Brick v. State,* 738 S.W.2d 676, 679 n. 5 (Tex.Crim.App.1987), *cert. denied,* 498 U.S. 818, 111 S.Ct. 63, 112 L.Ed.2d 38 (1990). The issue in *Brick* was whether a consent to be interrogated fol-

duly authorized power as a peace officer, that status continued so long as he acted outside the boundaries of the RANTF.

lowing an illegal arrest would be free of taint if it were shown that the consent was voluntarily given. Footnote 5 discussed that the government had a "heavier burden" of proving the consent was voluntary when the arrest was illegal compared to when the arrest was legal. Article 38.23 was mentioned only in the context of defining that "heavier burden" upon the State. In other words, the State must shoulder a great burden to prove the consent was voluntary if the taint of the illegal arrest is to be removed and the protections and purpose of Article 38.23 are to be circumvented. *See Brick v. State*, 738 S.W.2d at 679 n. 5.

The plurality in *Mayorga* also relied upon this Court's decision in *Johnson v. State*. 871 S.W.2d 744 (Tex.Crim.App. 1994). In *Johnson*, this Court did not discuss the issue of whether evidence existed prior to the act of being obtained illegally as opposed to the evidence coming into existence by virtue of the illegal act by which it was obtained, which is the focus of Judge Keller's argument in her concurring opinion. Instead *Johnson*, like *Brick*, discussed the attenuation of the taint of the illegal act.

> "(T)he attenuation doctrine is applicable to Art. 38.23's prohibition against evidence "obtained" in violation of the law because evidence sufficiently attenuated from the violation of the law is not considered to be "obtained" therefrom. ... If the evidence is not "obtained" in violation of the law, then its admission into evidence is not in contravention of Art. 38.23."

*Id.* at 750. *Johnson* does not stand for the proposition that the crime had been committed prior to the act of obtaining the evidence, and that the evidence from that crime existed prior to when it was obtained by the authorities, as the plurality in *Mayorga* implied.

Lastly, Judge Keller's concurring opinion argues that applying Article 38.23 to appellant would lead to absurd results. The concurring opinion contends that an application of Article 38.23 would make all information possessed by an accomplice witness inadmissible under Article 38.23. But it is important to note that the information possessed by an accomplice based on his or her observations during the commission of a crime is different from evidence subject to Article 38.23. A witness's testimony about what he or she has seen, heard, smelled, tasted, or felt during his or her participation in a criminal offense does not amount to evidence that he or she has acquired or taken. In the words of Judge Keller's concurring opinion, to "obtain" is to acquire or to possess by "one's own effort, or by request; to procure or gain as the result of purpose or effort." An accomplice's observations during the commission of a crime with an accused does not amount to evidence obtained in violation of the law and subject to Article 38.23.

VI.

Therefore, I would conclude that the Eastland Court of Appeals erred in holding Cox did not violate the terms of the RANTF agreement or any other laws in his investigation of appellant. The Eastland Court also erred by concluding that Cox did not act illegally in purchasing cocaine from appellant and by failing to reach the issue of the application of Article 38.23. I believe this Court should remand the cause to the Eastland Court of Appeals for an application of Article 38.23 on the admissibility of the cocaine. The court of appeals should have addressed whether the cocaine which Cox obtained from appellant was excludable under Article 38.23 in order to reach a final disposition of appellant's appeal. *See* Tex.R.App. P. 47.1.

Because the majority finds it unnecessary to apply Article 38.23 to the instant case, I respectfully dissent.