PD-0656-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/17/2015 6:21:02 PM
Accepted 8/18/2015 11:31:57 AM
ABEL ACOSTA
CLERK

PD-0656-15

## COURT OF CRIMINAL APPEALS OF TEXAS

**LAWAN PALUMBO,**
*Appellant,*

**VS.**

**THE STATE OF TEXAS,**
*Appellee.*

On Petition for Discretionary Review from the First Court of Appeals in Cause No. 01-13-01072-CR, affirming the conviction in Cause No. 1868453, In the County Criminal Court at Law No. 5 of Harris County, Texas.

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

August 18, 2015

ABEL ACOSTA, CLERK

**VICTORIA ERFESOGLOU**
Attorney at Law
SBN: 24076370
202 Travis, Suite 304
Houston, Texas 77002
Tel: (713) 252-4738
Fax: (832) 201-8225
verfeso@gmail.com

**Counsel for Appellant**

# IDENTITY OF JUDGE, PARTIES AND COUNSEL

Trial Court Judges:

Hon. Leslie Brock Yates
Hon. Margaret Harris
County Criminal Court at Law No. 5
Harris County, Texas
1201 Franklin Street, 7th Floor
Houston, Texas 77002

Parties to the Judgment:

Lawan Palumbo
The State of Texas

Names and addresses of
trial counsel (State):

Kristena Glenn
Alvin Adjei
Christopher Handley
Assistant District Attorneys
Harris County, Texas
1201 Franklin Street, 6th Floor
Houston, Texas 77002

Name and address of
trial counsel (Defense):

Joaquin Jimenez
7575 Gulf Freeway
Houston, Texas 77017

Counsel on appeal for the State of Texas:

Abbie Miles
Alan Curry
Assistant District Attorney
Harris County, Texas
1201 Franklin Street, 6th Floor
Houston, Texas 77002

Counsel on appeal for the Appellant:

Allison Jackson
601 Sawyer Street, Ste. 105
Houston, Texas 77007

Counsel for PDR for the Appellant:

Victoria Erfesoglou
202 Travis, Suite 304
Houston, Texas 77002

i

# TABLE OF CONTENTS

|  | **PAGE** |
|---|---|
| Identity of Judge, Parties and Counsel: | i |
| Table of Contents: | ii |
| Index of Authorities: | iv |
| Statement Regarding Oral Argument: | vi |
| Statement of the Case: | vi |
| Statement of Procedural History: | vii |
| Grounds for Review: | 1 |

Ground for Review One

Where Officer Smith testified that he groped the Appellant's breasts and buttocks prior to arresting her, did the court of appeals err in concluding that such behavior did not violate the Appellant's constitutional or statutory rights, and that she was therefore not entitled to a jury instruction under article 38.23(a)?

Ground for Review Two

Given the violation to Appellant's body, the court of appeals err in holding that Appellant's trial counsel was not ineffective when he did not attack the admissibility of Smith's testimony or his audio recording on the theory that Appellant could not have invoked Tex. Code Crim. Proc. Art. 38.23(a).

Ground for Review Three

The court of appeals erred in upholding the trial court's refusal to provide the Appellant, after she repeatedly requested one, and to instead treat Appellant as a person "with a lower education."

| Argument Under Grounds for Review: | 2 |
|---|---|

# TABLE OF CONTENTS (Cont'd)

PAGE

Prayer for Relief:                                           17

Certificate of Service:                                      18

Certificate of Compliance:                                   19

Appendix (*Palumbo v. State*):                        appendix

# INDEX OF AUTHORITIES

**Cases**                                                     **Page**

*Baltierra v. State*, 586 S.W.2d 553, 556-9 (Tex. Crim. App. 1979)........................ 14

*Chavez v. State*, 9 S.W.3d 817, 819 (Tex. Crim. App. 2000) ........................... 7, 11

*Crawford v. Washington*, 541 U.S. 36, 42 (2004) ............................................... 14

*Fuller v. State*, 829 S.W.2d 191, 202 (Tex. Crim. App. 1992)........................... 7, 11

*Garcia v. State*, 149 S.W. 3d 135 (Tex. Crim. App. 2004)............................... 14-15

*Garcia v. State*, 429 S.W.3d 604 (Tex. Crim. App. 2014).............................. 14-16

*Hampton v. United States*, 425 U.S. 484 ......................................................... 12

*Lopez v. State*, 574 S.W.2d 563 (Tex. Crim. App. 1978) .................................. 10

*Miller v. State*, 177 S.W.3d 1 ...................................................................... 13, 14
(Tex. App.—Houston [1ˢᵗ Dist.] 2004, no pet.)

*Palumbo v. State*, No. 01-13-01072-CR, 2015 ............................................... *passim*
(Tex. App.—Houston [1ˢᵗ Dist.] April 16, 2015, no pet. h.)

*Watson v. State*, 10 S.W.3d 782, 784 ......................................................... 7, 11-12
(Tex. App.—Austin 2000, no pet.)

*Wilson v. State*, 311 S.W.3d 452, 458-9 (Tex. Crim. App. 2010)................. 7, 9-10, 13

**Statutes and Rules**

Health and Safety Code Ann., sec. 481.062(a)(4) ............................................. 9

Tex. Code Crim. Proc. Ann., art. 38.23(a) ...................................... 6-10, 12-13

Tex. Code Crim. Proc. Ann., art. 38.30 ........................................................... 14

Tex. Code Crim. Pro. Ann., art. 43.06 ............................................................ 10

# INDEX OF AUTHORITIES (Cont'd)

Tex. Const. art. I, sec. 19 ......................................................... 12

Tex. Penal Code Ann., sec. 22.011(b)(8)........................................... 12

Tex. Penal Code Ann., sec. 43.05................................................. 12

Tex. Penal Code Ann., sex. 43.06 ................................................ 10

U.S. Const. amend. VI ......................................................... 13

U.S. Const. amend. XIV ......................................................... 12

## Other Authority

*George E. Dix & John M. Schmolesky*, 6 Texas Practice and Procedure............. 10, 12
Criminal Law Sec. 25.6 (2d ed. 2015)

## STATEMENT REGARDING ORAL ARGUMENT

Appellant believes oral argument would assist the Court in disposition of the issues presented. Oral argument would be helpful because the issue of whether an officer's unfettered and unnecessary sexual contact with a suspect of prostitution is sanctioned, is an important issue of state law that has not been, but should be, decided by this Court. *See* Tex. R. App. P. 66.3(b).

## STATEMENT OF THE CASE

The Appellant was charged by misdemeanor information with the class B offense of prostitution, in cause number 1868453, alleged to have occurred on or about December 17, 2012 (C.R. at 7). The punishment range for a Class B Misdemeanor is up to 180 days confinement in county jail, and up to a $2,000 fine. The jury found Appellant guilty (C.R. at 44). Although the Appellant filed an election for the jury to assess punishment, Appellant reached an agreement on punishment with the State, for 180 days probated for one year, and a $2,000 fine (6 R.R. at 6). The judge modified Appellant's punishment to include a condition that Appellant reimburse the State for attorney's fees for her appointed counsel (6 R.R. at 7). Appellant did not file a Motion for New Trial. Appellant's Notice of Appeal was filed on November 26, 2013. (C.R. at 54).

## STATEMENT OF PROCEDURAL HISTORY

On April 16, 2015, in a published opinion, the First Court of Appeals affirmed the Appellant's conviction. *Palumbo v. State,* No. 01-13-01072-CR, 2015 (Tex. App.—Houston [1st Dist.] April 16, 2015, no pet. h.). A motion for rehearing was not filed. This Court has extended the time to file the Appellant's Petition for Discretionary Review until August 17, 2015, which is the date that this document is being e-filed.

# GROUNDS FOR REVIEW

## GROUND FOR REVIEW ONE

Where Officer Smith testified that he groped the Appellant's breasts and buttocks prior to arresting her, did the court of appeals err in concluding that such behavior did not violate the Appellant's constitutional or statutory rights, and that she was therefore not entitled to a jury instruction under article 38.23(a)?

## GROUND FOR REVIEW TWO

Given the violation of Appellant's body, did the court of appeals err in holding that Appellant's trial counsel was not ineffective when he did not attack the admissibility of Smith's testimony or his audio recording on the theory that Appellant could not have invoked Tex. Code Crim. Proc. Art. 38.23(a)?

## GROUND FOR REVIEW THREE

The court of appeals erred in upholding the trial court's refusal to provide the Appellant with an interpreter after she repeatedly requested one, and to instead treat Appellant as a person "with a lower education."

# ARGUMENT UNDER GROUNDS FOR REVIEW

## A. Statement of Facts Relative to Grounds for Review:

The misdemeanor information in this case alleges, in relevant part, that:

...**PALUMBO,** hereafter styled the Defendant, heretofore on or about December 17, 2012, did then and there unlawfully, knowingly AGREE TO ENGAGE in sexual conduct, namely, sexual intercourse, to-wit: STRAIGHT SEX, with B. SMITH, for a fee.....[and] deviate sexual intercourse, to-wit: ORAL SEX, with B. Smith, for a fee. (C.R. at 7).

Officer Smith (hereafter "Smith") went to the Pink Spa in an undercover capacity and paid a $60 door fee to "Lola," the manager. (4 R.R. at 70). Smith went to a massage room alone and Ms. Palambo (hereafter "Appellant") entered the room. (4 R.R. at 49). At one point, "Lola" entered the room to ask if Smith was an undercover officer. (4 R.R. at 80). Smith denied he was an officer and "Lola" left the room. *Id.* Appellant, now alone with Smith, never asked him if he was an undercover officer. (4 R.R. at 98). In the room, Appellant was nervous and afraid. (4 R.R. at 80). Her fear and nervousness was visible to Smith. (4 R.R. at 80-1). Smith told Appellant to relax, she was doing fine and assured her it was okay. *Id.*

Smith's supervisor, Sergeant McDaniel (hereafter "McDaniel") was familiar with the Pink Spa. (4 R.R. at 35). McDaniel testified these kinds of massage parlors are locked from the inside, controlled by the manager at the door, and equipped with cameras. (4 R.R. at 26).

In the room Smith took off his clothes and got on his stomach. (4 R.R. at 72, 78). Appellant was rubbing Smith when he asked her "How much is it to fuck?" (4

2

R.R. at 74). Smith testified that after some negotiating he offered Appellant $140 for sexual intercourse and oral sex. (4 R.R. at 75, 83, 84). He said Appellant agreed by shaking her head yes and saying, 'yeah, that's fine.' (4 R.R. 75). After Smith made the agreement with Appellant, he arrested her. (4 R.R. 84-5).

Prior to her arrest, Smith testified he asked to see Appellant's breasts and she took her top off. (4 R.R. 81). He then touched her breasts. (4 R.R. at 81-2). Smith proceeded to ask what he was going to get for his money, and "how much is it to fuck?" (4 R.R. 82). Smith touched Appellant's buttocks too. (4 R.R. at 97). Smith explained that he touched Appellant's private areas to assure her that he was not an undercover officer, although Appellant never asked him if he was, and was already rubbing him. (4 R.R. at 74, 97-8).

Appellant was acting nervous and embarrassed, and Smith told Appellant there was "no sense in being nervous or embarrassed." (4 R.R. 99). More than once, Smith testified that Appellant was mumbling, scared, nervous, and afraid. (4 R.R. 80, 81, 98, 99). Although Smith said he did not coerce the Appellant, he admitted to telling her to relax and that "it" was okay. (4 R.R. 81, 85).

Appellant's trial counsel informed the court that Appellant is a Thai native speaker. (R.R. at 112). He also informed the court that it was not Appellant's decision to proceed without an interpreter. (4 R.R. at 111). During trial, Appellant did not have an interpreter. (R.R. at 1-116). When Appellant took the stand, she did not have an interpreter, and the trial court was concerned about Appellant's ability

3

to understand English. (4 R.R. at 101-3, 112). The judge specifically asked Appellant if she wanted an interpreter. (4 R.R. at 113). Appellant told the judge, multiple times, that she wanted an interpreter. (4 R.R. at 113). Even after Appellant's requests, an interpreter was never brought to court. (4 R.R. 113-4). The trial court ultimately decided that the State could treat Appellant like someone with a "lower education," in lieu of obtaining an interpreter, and "explain" the questions being asked while on the witness stand. (4 R.R. at 116). Similarly, the preceding evidence and witness testimony, were never interpreted or "explained" for Appellant. (4 R.R. 1-116).

Once the jury was brought back to the courtroom, the trial court informed the jury that Appellant was comfortable going forward without an interpreter, even though Appellant told the judge she wanted one. (4 R.R. 117). The exchange, in relevant part, was as follows:

THE COURT: I'm a little uncomfortable as to her fluency in English. Are you convinced that she's fluent in English?

MR. JIMENEZ: It's a tough call. I was going to get an interpreter, but I think she knew enough to –

THE COURT: Did you discuss it with her?

MR. JIMENEZ: Yes.

THE COURT: And was it her decision to go forward without an interpreter?

MR. JIMENEZ: No.

...

4

THE COURT: Ms. Palumbo…I'm concerned that you might not understand everything that's happening. How do you feel about it? Do you feel like you understand what everyone is asking you and saying?

THE DEFENDANT: You know, be honest with you, sometimes I understand, but sometimes the truth is the truth, you know. But I try to answer the truth, that's all I did.

THE COURT: That's not my question, though. I just want to know whether you need an interpreter. Do you need someone to speak Thai with you?

THE DEFENDANT: Yes. First, I ask him because sometimes you know, like, the word fall, sometimes I don't understand.

THE COURT: Okay. And you said early on – or before you asked him that. How about trial, though, are you okay testifying without an interpreter to speak Thai with you?

THE DEFENDANT: Yes.

THE COURT: You're okay? You feel like you understand well enough?

THE DEFENDANT: Yes.

THE COURT: Because one of these lawyers is getting ready – I think Ms. Glenn is going to start asking you questions in English, and you need to be able to understand her correctly so that you can answer correctly.

THE DEFENDANT: But may I ask you for the translator for a little bit, that's okay? Like with some questions I don't understand, like, I might ask my brother or something? (4 R.R. at 113-4).

An interpreter was never brought for Appellant, during her testimony Appellant asked "what you mean," "say again," more than once, and when the judge next asked her if she understood, she replied, "I try." (4 R.R. 118, 120, 123, 129).

5

**B. Appellant's Argument At The Court of Appeals, and That Court's Opinion:**

Appellant complained her trial counsel was ineffective by failing to attack, or object to the admission of unlawfully obtained evidence, Smith's testimony and his audio recording. *Palumbo* at 2. Appellant also argued the trial court committed fundamental error by admitting said unlawfully obtained evidence; and failing to provide a jury charge according to article 38.23 of the Texas Code of Criminal Procedure. *Id.* Lastly, Appellant complained the trial court erred by failing to appoint an interpreter during Appellant's trial. *Id.*

Specifically, Appellant complained that the prostitution statute does not contain a provision authorizing officers to violate that statute in order to conduct investigations. Appellant further complained that Smith committed prostitution and violated the law prior to arresting her, and the evidence against her was collected unlawfully. As a result, Appellant complained trial counsel rendered ineffective assistance of counsel when he failed to object and/or attack the unlawfully obtained evidence. Since a 38.23 instruction was never provided, Appellant essentially argued there was unobjected-to error in the court's charge which resulted in egregious harm. Appellant argued that the trial court was aware of Appellant's inability to understand or communicate effectively in English, yet an interpreter was never appointed for her. *Id* at 6, 9.

The First Court of Appeals responded, in relevant part,

> article 38.23 prohibits any evidence obtained in violation of law from being admitted against an accused in trial of a criminal case. Tex. Code

6

Crim. Proc. art. 38.23(a) (West 2005). Nevertheless, article 38.23(a) does not 'confer automatic third party standing upon all persons accused of crimes, such that they may complain about the receipt of evidence which was obtained by violation of the rights of others, no matter how remote in interest from themselves.' *Fuller v. State*, 829 S.W.2d 191, 202 (Tex. Crim. App. 1992); *see Chavez v. State*, 9 S.W.3d 817, 819 (Tex. Crim. App. 2000). The purposes underlying article 38.23(a) are the same as the purposes underlying the federal exclusionary rule: 'to protect a suspect's privacy, property, and liberty rights against overzealous law enforcement,' and the primary purpose 'is to deter unlawful actions which violate the rights of criminal suspects in the acquisition of evidence for prosecution.' *Wilson v. State*, 311 S.W.3d 452, 458-9 (Tex. Crim. App. 2010) (emphasis added). …article 38.23(a) may not be invoked for statutory violations unrelated to the purpose of the exclusionary rule or to the prevention of the illegal procurement of evidence of crime.' *Id.; see also Watson v. State*, 10 S.W.3d 782, 784 (Tex. App.—Austin 2000, no pet.). *Id* at 7-8.

The First Court of Appeals found that all of Appellant's arguments concerning article 38.23 hinged on her ability to invoke article 38.23 "for an alleged violation of the prostitution statute." *Palumbo* at 7. The First Court of Appeals addressed the fact that Smith agreed to pay Appellant money in exchange for oral and vaginal sex, but they did not address the officer's acts of touching Appellant's breasts and buttocks. *Palumbo* at 2, 6. The court reasoned, since Appellant could not invoke article 38.23(a) based on the officer's verbal agreement, her trial counsel was not ineffective by failing to attack the officer's testimony and audio recording under article 38.23(a), and the trial court did not commit fundamental error by admitting the evidence and omitting an article 38.23(a) instruction from the jury charge. *Id* at 8-9. Accordingly, Appellant's first three complaints concerning ineffective assistance of counsel and the admission of the unlawful evidence obtained by Smith were overruled based on her lack of standing to

7

invoke article Tex. Crim. Code Pro., art. 38.23(a). *Id.* The First Court of Appeals never addressed the unnecessary touching of Appellant's private parts.

Appellant also complained the trial court erred in failing to provide an interpreter for her. This complaint was also overruled by the First Court of Appeals. The appellate court found that the trial court addressed the issue of an interpreter with Appellant during trial, and that Appellant was capable of understanding English. *Id* at 10. The court of appeals responded further that Appellant told the trial court she did not want an interpreter and that Appellant freely, and knowingly waived her right to an interpreter. *Id* at 11.

### C. Argument Under Grounds for Review:

#### 1. Appellant's standing to invoke Tex. Crim. Code Pro., art. 38.23(a):

Review is proper pursuant to Tex. R. App. Pro. 66.3(b) because the court of appeals has decided an important question of state law that has not been, but should be, settled by the Court of Criminal Appeals. Specifically, how much of Appellant's body could Smith have sexual contact with, though unnecessary for his investigation, before violating her constitutional rights, rights under due process, and providing Appellant with standing to invoke Tex. Code Crim. Pro., art. 38.23(a)? How much unfettered sexual contact was Smith allowed to engage in, even though it was not necessary for his arrest of Appellant, before said conduct was sufficiently outrageous as to violate the concept of fundamental fairness inherent in Appellant's due process rights? Did said unnecessary sexual contact provide Appellant with standing to invoke

8

Tex. Code Crim. Pro., art. 38.23(a), to challenge Smith's recording and testimony as inadmissible evidence?

The First Court of Appeals correctly agreed that the primary purpose of Tex. Code Crim. Pro., art. 38.23(a) is to deter unlawful actions which violate the rights of criminal suspects in the acquisition of evidence for prosecution. *Id* at 7. The primary purpose of article 38.23(a) is to deter unlawful actions which violate the rights of criminal suspects in the acquisition of evidence for prosecution. *Wilson v. State,* 311 S.W.3d 452, 459 (Tex. Crim. App. 2010). "Article 38.23(a) may not be invoked for statutory violations unrelated to the purpose of the exclusionary rule or to the prevention of the illegal procurement of evidence of crime." *Id.*

In *Wilson,* the court stated that one of the principles in safeguarding against officers' violations, is to address

> the harm that comes from the [actor's] disobedience of the law- damage to the authority of the government; a lessening of the public's confidence in our institutions; public cynicism, fear, and uncertainty and a social climate that is likely to lead to even greater disobedience. *Id* at 460.

The State often argues that trickery and deception are necessary in interrogations and in order to catch criminals. *Id* at 461-2. However, this Court (opinion by Judge Cochran, joined by Judges Price, Womack, Johnson and Holcomb) disagreed in *Wilson. Id.* Undercover drug investigations, like drug buys, involve specific statutorily sanctioned deception. *Id* at 463. The Texas legislature specifically exempted liability for officers to possess controlled substances during undercover drug buys. *Id.* Health and

9

Safety Code § 481.062(a)(4), allows officers in the lawful discharge of their official duties, to possess controlled substances, without fear of penalty. *Id* at 463 n. 42. However, there is no legislative exemption for officers to tamper with government documents and/or to fabricate evidence. *Id.* Similarly, there is no legislative exemption for officers to commit prostitution, sexual assault, compelling prostitution, or other sexual acts on suspects. "Sometimes 'it takes a thief to catch a thief,' but the decision to exempt police officers from certain penal laws rests with the Legislature, not the court." *Id* at 463.

An undercover officer is not an accomplice if he does not bring about the crime, and only collects evidence against those engaged in crime. *Lopez v. State*, 574 S.W.2d 563, 565 (Tex. Crim. App. 1978). However, officers who do participate in a crime, may freely testify under Tex. Penal Code Sec. 43.06 as an accomplice. Officers who testify in court in prostitution cases get immunity from prosecution under this theory as an accomplice witness furnishing testimony and/or evidence. *George E. Dix & John M. Schmolesky*, 6 Texas Practice: Criminal Law sec. 25.6 (2d ed. 2015). However, the legislature did not provide officers with more than testimonial immunity in prostitution cases. There are several instances of officer immunity, beyond testimony, in cases similar to undercover drug investigations, but, prostitution is not among them. Here, the First Court of Appeals found that regardless of Smith's violations, Appellant could not invoke article 38.23 or challenge Smith's unlawful conduct because she did not have standing. *Palumbo* at 8.

10

Under *Chavez*, and *Watson*, there is no third party beneficiary status to complain about law enforcement conduct. *Id; Chavez v. State*, 9 S.W.3d 817 (Tex. Crim. App. 2000); *Watson v. State*, 10 S.W.3d 782 (Tex. App.-Austin 2000). In *Watson*, a female undercover officer acting as a decoy solicited a 'john' to prostitution verbally. *Watson* at 783. At no time did the undercover officer touch the criminal suspect's private areas. *Id*. An agreement to exchange money for oral sex was made, and the suspect was arrested. *Id*. The female officer's verbal solicitation of the suspect to exchange money for oral sex did not confer standing on him to trigger the exclusionary requirement. *Id* at 784.

In *Chavez*, the appellant did not allege any violation of her own rights. *Chavez* at 818. This Court in *Chavez*, relied on *Fuller*, where a defendant did not have standing to complain about seized evidence because no invasion of his rights occurred. *Id*. In *Fuller*, the defendant made a sexual audio recording while he was in custody for capital murder and attempted to give it to a female inmate. *Fuller v. State*, 829 S.W.2d 191, 201 (Tex. Cr. App. 1992). The recording was intercepted by another inmate who turned it over to law enforcement. *Id*. In all three cases, the defendants were found to not have standing to invoke 38.23(a) because their personal rights were not violated.

The facts in *Fuller, Watson* and *Chavez* are entirely distinguishable from this case. Here, Smith admitted to touching Appellant's breasts and buttocks, even though she did not ask him if he was an undercover officer, and it was not necessary to the verbal agreement made to exchange sexual intercourse and oral sex for money. (4 R.R. 74, 97-

11

8). Physically touching her body was not necessary for his investigation or arrest. A decision stating Appellant does not have standing to assert a violation of her rights when her private areas were violated by Smith is illogical.

> Perhaps the fairest reading of [Article 38.23] is that it must have been intended to permit challenges to evidence on the basis that the evidence was obtained in violation of a 'law' that serves to protect an individual's personal and property rights from infringement by others. *George E. Dix & John M. Schmolesky*, 6 Texas Practice: Criminal Law sec. 25.6 (2d ed. 2015).

At its core, the primary purpose of article 38.23(a) is to deter unlawful actions which violate the rights of suspects. *Watson* at 784. Here the First Court of Appeals cited *Watson* and found Appellant lacked standing to assert a violation of 38.23(a) because Smith did not violate her constitutional or statutory rights. *Palumbo* at 8. However, *Watson* is completely distinguishable from Appellant's case. The female officer in *Watson* did not touch his genitalia or private parts. *Id.*

The due process rights guaranteed by the United States and Texas constitutions, protect individuals against abusive government action. U.S. Const. amend. XIV; Tex. Const. art. I, § 19. Even a predisposed defendant may have this kind of protection when police over-involvement reaches a "demonstrable level of outrageousness." *Hampton v. United States*, 425 U.S. 484, 495 n. 7, (Powell, J., concurring). Under Tex. Penal Code Sec. 22.011(b)(8), sexual assault occurs without the consent of the other person, if the actor is a public servant who coerces the other person to submit or participate. Pursuant to Tex. Penal Code Sec. 43.05, compelling prostitution occurs, if the actor knowingly causes another by force, threat, or fraud to commit prostitution. Smith testified that

12

"Lola" was the only person in the Pink Spa to ask if he was an officer. (4 R.R. at 80). He admitted Appellant was nervous and afraid, and he had to tell her to relax. (4 R.R. 81, 85). Smith's acts of touching Appellant's breasts and buttocks was not necessary to conceal his identity. Smith answered that he wanted to see her breasts, but he did not stop there. He proceeded to touch her breasts and her buttocks. Smith did not need to touch Appellant's private areas to conduct his investigation. "A 'good faith,' or 'pure motive' violation of Texas penal laws concerning the acquisition of evidence does not render art. 38.23 inapplicable to the evidence obtained as a result of that violation." *Wilson* at 465. There should be an incentive for officers to behave with integrity.

Smith's motives in touching Appellant's private areas do not affect Appellant's standing to invoke article 38.23(a). The touching played no part in Smith's probable cause to arrest Appellant. Allowing officers to freely engage in this unnecessary sexual contact, with no investigative purpose, with people in Appellant's position, shocks the conscience.

## 2. Appellant's Requests for an Interpreter and Her Waiver:

Review is proper pursuant to Tex. R. App. Pro. 66.3(a) because the First Court of Appeals' decision conflicts with the decision of another panel of the same court of appeals, specifically, *Miller v. State*, 177 S.W.3d 1 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

> The Sixth Amendment's Confrontation Clause provides that '[i]n all criminal prosecutions, the accused shall enjoy the right…to be confronted with the witnesses against him.' US Const. Amend. VI. This 'bedrock

13

procedural guarantee' applies to both federal and state prosecutions. *Crawford v. Washington*, 541 U.S. 36, 42 (2004). Likewise the Texas Constitution guarantees that …the accused be confronted by the witnesses against him. Tex. Const. art. I, sec. 10. Cross-examination has been described as 'beyond any doubt the greatest legal engine ever invented for the discovery of truth.' *Miller* at 5.

This Court acknowledged that providing an interpreter to an accused who doesn't understand English is required by the Confrontation Clause and by the Texas Constitution. *Baltierra v. State*, 586 S.W.2d 553, 556-9 (Tex. Crim. App. 1979). This concept has been codified in Tex. Code Crim. Pro., Art. 38.30, which states that even on motion of the court, if it is determined that a person charged…does not understand and speak English, an interpreter must be sworn to interpret. *Miller* at 6. Confrontation clause guarantees are "simply lost to an accused who, because of a language barrier," is deprived of meaningful cross-examination. *Id.*

Review is also proper pursuant to Tex. R. App. Pro. 66.3(c) because the First Court of Appeals has decided an important question of state law in a way that conflicts with an applicable decision of the Court of Criminal Appeals in *Garcia v. State*, 149 S.W. 3d 135 (Tex. Crim. App. 2004), and in *Garcia v. State*, 429 S.W.3d 604 (Tex. Crim. App. 2014). Further, review is proper pursuant to Tex. R. App. Pro. 66.3(f) because the Court of Appeals has so far departed from the accepted and usual course of judicial proceedings as to call for an exercise of the Court of Criminal Appeals' power of supervision.

14

Absent an effective waiver that is knowing and voluntary an accused's rights under the Sixth Amendment, as well as the ability to participate during trial in a meaningful way, are violated. *Garcia v. State,* 149 S.W. 3d 135, 145 (Tex. Crim. App. 2004). If the judge is aware of a defendant's language barrier, the judge has an independent duty to ensure the proceedings are interpreted for the defendant. *Id* at 144. "It would be illogical to require a non-English speaking defendant to assert [her] right to an interpreter in a language [she] does not understand, when [she] may very well be unaware [of the] right in the first place." *Id.*

Without a knowing and intelligent waiver, defendant maintains the right. *Id.* The classic definition of waiver is an intentional relinquishment or abandonment of a known right. *Id.* There must be evidence that a valid waiver occurred. *Garcia v. State,* 429 S.W.3d 604, 608 (Tex. Crim. App. 2014). Although the Court found in the 2014 *Garcia* case that a valid waiver of the right to an interpreter occurred, there was evidence to support that waiver was voluntary and intelligent. *Id* at 609. In that case, trial counsel discussed the strategy of not getting an interpreter with *Garcia,* in Spanish, defendant's native language, and a language in which trial counsel was fluent. *Id* at 606. *Garcia* told trial counsel, in Spanish, that he was in agreement with trial counsel's strategy not to get an interpreter, and trial counsel interpreted all of the evidence and testimony to *Garcia* during breaks. *Id.* The prosecutor and the trial judge were made aware that trial counsel would be interpreting the testimony for *Garcia* and that he did not want to get an interpreter due to strategy. *Id.*

15

Appellant's trial counsel was not fluent in Thai. An interpreter was never obtained for her. While on the witness stand the trial court specifically asked Appellant if she wanted an interpreter because she was a native Thai speaker. (4 R.R. at 112). The trial court was concerned about her ability to understand English. (4 R.R. at 113). Appellant said "yes," when asked if she wanted an interpreter, more than once. *Id.* She signaled that she was having trouble understanding multiple times. (4 R.R. 118, 120, 123, 129). The trial court instructed the State to treat Appellant as though she had a "lower education," and "explain" things Appellant did not understand while she was on the witness stand. (4 R.R. at 116). An interpreter was never brought for Appellant. No one interpreted, or "explained" the preceding testimony or evidence for Appellant, not in Thai and not as though she had a "lower education." *Id.* Appellant was forced to navigate the proceedings without fully comprehending her trial or the testimony against her.

The trial judge's decision to proceed without an interpreter, after Appellant asked for one, was an abuse of discretion. The First Court of Appeals found that the trial court did not act arbitrarily in deciding not to obtain an interpreter because Appellant stated she did not want one. But Appellant asked for an interpreter more than once. (4 R.R. 113). She signaled to the judge that she did not understand the proceedings, more than once. (4 R.R. 118, 120). The proceedings were never interpreted for her or explained. Although Appellant asked for an interpreter, the trial court pressed on in English, and decided not to get one. (4 R.R. 116). How many times did Appellant have

16

to say 'yes' when asked if she wanted an interpreter in order for the trial court to secure one?

## PRAYER FOR RELIEF

For the reasons stated above, the Appellant moves that this Court grant her petition and reverse the judgment of conviction in this case, and remand the case for a new trial.

Respectfully Submitted,

/s/ Victoria Erfesoglou
Victoria Erfesoglou
SBN 24076370
202 Travis, Suite 304
Houston, Texas 77002
Tel: (713) 252-4738
Fax: (832) 201-8225
verfeso@gmail.com

**Counsel for Appellant**

# CERTIFICATE OF SERVICE

I hereby certify that on this the 17th day of August 2015, a copy of the foregoing petition has been served on Alan Curry, who is the chief of the appellate division of the Harris County District Attorney's Office, and on the State Prosecuting Attorney by mail and/or hand-delivery.


/s/Victoria Erfesoglou
Victoria Erfesoglou

# CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitations of Tex. R. App. Proc. 9.4(e) and 9.4(i). It contains **4,338** words printed in proportionally spaced typeface using Garamond 14 point font.

/s/ Victoria Erfesoglou
Victoria Erfesoglou

# APPENDIX

Opinion in *Palumbo v. State,* No. 01-13-01072-CR, 2015
(Tex. App. Houston [1st Dist.] April 16, 2015).

Opinion issued April 16, 2015



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-01072-CR

———————————

**LAWAN PALUMBO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 5**
**Harris County, Texas**
**Trial Court Case No. 1868453**

---

## MEMORANDUM OPINION

A jury convicted appellant, Lawan Palumbo, of the misdemeanor offense of prostitution. *See* TEX. PENAL CODE ANN. § 43.02(a) (West Supp. 2014). The trial court then assessed punishment, as agreed to by the parties, at 180 days' confinement in the county jail and a $2,000 fine, but suspended imposition of the

confinement and placed Palumbo on community supervision for one year. In four issues on appeal, appellant contends: (1) trial counsel rendered ineffective assistance by failing to object to, or otherwise attack, the admission of unlawfully obtained evidence; (2) the trial court committed fundamental error by admitting the unlawfully obtained evidence; (3) the trial court erred by failing to *sua sponte* issue a jury charge pursuant to article 38.23 of the Texas Code of Criminal Procedure regarding the unlawfully obtained evidence; and (4) the trial court erred by failing to *sua sponte* appoint an interpreter for Palumbo's benefit. We affirm.

## Background

On December 17, 2012, officers from the vice division of the Houston Police Department conducted an undercover investigation at the Pink Spa, to determine whether prostitution was occurring at the business. As part of the investigation, Officer Bobby Smith entered the Pink Spa posing as a customer. Upon entering the business, Smith paid a $60 door fee and was escorted to a room. Palumbo then entered the room, wearing lingerie. After Palumbo provided Smith with a short massage, she inquired what else Smith would like. Smith, using street language, asked how much it would cost to have sexual intercourse with Palumbo. After some negotiation, Smith offered Palumbo $140 in exchange for Palumbo engaging in sexual intercourse and oral sex with him. Smith testified that Palumbo agreed to his proposition and that they agreed to exchange $140 for the provision

2

of sexual intercourse and oral sex. After the agreement was made, Smith identified himself as a police officer and arrested Palumbo.

The State charged Palumbo by information with committing the offense of prostitution. Palumbo pleaded not guilty to the charge.

At trial, the State introduced, among other evidence, Smith's testimony and an audio recording Smith made during his undercover investigation.

Palumbo, who has lived in Houston since 1990, also testified at trial. Near the conclusion of her testimony on direct examination, the trial court called the attorneys to the bench, where the following exchange occurred:

> The Court: I'm a little uncomfortable as to her fluency in English. Are you convinced that she's fluent in English?
> [Defense counsel]: It's a tough call. I was going to get an interpreter, but I think she knew enough to –
> The Court: Did you discuss it with her?
> [Defense counsel]: Yes.
> The Court: And was it her decision to go forward without an interpreter?
> [Defense counsel]: No.
> The Court: Did she ask for an interpreter?
> [Defense counsel]: I mentioned it to her.
> The Court: And what did she say? That she was comfortable going forward without one. [sic]
> [Defense counsel]: I asked her if she understood what we were talking about and she said yes.
> The Court: Okay. Did you ever ask her whether she wanted to have an interpreter or not?
> [Defense counsel]: Maybe early on in the case, like, at our settings.
> The Court: Okay. And she said?
> [Defense counsel]: No.

3

The Court: Okay. Have you been comfortable that she understood what you told her prior to trial?

[Defense counsel]: yes.

The Court: And during this trial, has she appeared to understand?

[Defense counsel]: Yes.

The Court: What is her native language?

[Defense counsel]: Thai.

The trial court then excused the jury from the courtroom and held a hearing to determine whether an interpreter was necessary for Palumbo's benefit:

The Court: . . . I'm concerned that you might not understand everything that's happening. How do you feel about it? Do you feel like you understand what everyone is asking you and saying?

[Palumbo]: You know, be honest with you, sometimes I understand, but sometimes the truth is the truth, you know. But I try to answer the truth, that's all I did.

The Court: That's not my question, though. I just want to know whether you need an interpreter. Do you need someone to speak Thai with you?

[Palumbo]: Yes. First, I ask him because sometimes, you know, like, the word fall, sometimes I don't understand.

The Court: Okay. And you said early on – or before you asked him that. How about for trial, though, are you okay testifying without an interpreter to speak Thai with you?

[Palumbo]: Yes.

The Court: You're okay? You feel like you understand well enough?

[Palumbo]: Yes.

. . .

[Palumbo]: But may I ask you for the translator for a little bit, that's okay? Like, with some questions I don't understand, like, I might ask my brother or something.

The Court: No. No. But we can do one of two things. We can stop the trial right now and come back tomorrow with an interpreter, if we can find one by then. Or you can, if you don't understand a particular phrase, you can ask either lawyer to say it a different way to see if you understand the other way.

4

[Palumbo]: Okay.

The Court: It's up to you.

[Palumbo]: So, I can ask them, like, what this mean, right?

The Court: Yes.

[Palumbo]: Okay.

The Court: Like, if they said a phrase and you didn't understand those words, you can ask: What does that mean?

[Palumbo]: Okay.

The Court: And they can try to explain it to you.

[Palumbo]: Okay.

The Court: I don't mind either way. I did not anticipate your testifying. I don't think your lawyer knew that you were going to testify either. You understand what all the other witnesses said, right?

[Palumbo]: Yes.

The Court: So, there's no problem with that?

[Palumbo]: No.

The Court: Okay. And so it's just a matter of whether you understand what you're being asked. If you get to a point where you don't think you can do this without an interpreter let me know.

[Palumbo]: Okay.

The Court: All right. So, what do you want to do: Do you want to try just asking them what they mean, or do you want to wait for an interpreter?

[Palumbo]: Maybe I try for what they ask, the question.

The Court: Okay.

. . .

The Court: . . . So, we all agree, that the minute you tell me you don't understand – and they can't explain it to you – we'll just recess and get an interpreter.

[Palumbo]: Okay.

Palumbo continued to testify after this exchange, and she only requested clarification of one question posed to her, which she understood upon clarification. Further, she testified that she has owned more than one business and that she has worked with approximately 30 English-speaking employees on a daily basis.

At the conclusion of the trial, the jury found Palumbo guilty of prostitution.

5

## Admissibility of Evidence of Undercover Investigations

In her first three issues on appeal, Palumbo argues that, because intent is not an element of the offense of prostitution and because the prostitution statute does not contain a provision authorizing law enforcement officials to violate the statute in order to conduct investigations, Smith committed the offense of prostitution when he agreed to pay Palumbo money in exchange for sexual conduct. Palumbo therefore argues that the evidence obtained as a result of Smith's investigation, including his testimony and the recording of his investigation, was obtained in violation of the law and was inadmissible pursuant to article 38.23 of the Texas Code of Criminal Procedure. Based on this argument, Palumbo contends, in her first issue on appeal, that she was denied effective assistance of counsel because her trial counsel failed to seek suppression, or object to the admission, of Smith's testimony and the recording, and there is no cognizable strategic reason that counsel could have for failing to object to the admission of the only evidence proffered by the State showing that Palumbo committed the offense of prostitution. In her second issue, Palumbo contends that because Smith's testimony and the recording were obtained in violation of the law, article 38.23(a) barred the admission of said evidence at her trial and the trial court committed fundamental error by admitting the evidence. And in her third issue, Palumbo contends that the trial court erred by failing to *sua sponte* include a jury charge containing an

instruction pursuant to article 38.23 regarding Smith's testimony and the recording. Because each of these issues hinges on Palumbo's ability to invoke article 38.23, we first consider whether Palumbo may invoke article 38.23 for an alleged violation of the prostitution statute, section 43.02 of the Texas Penal Code.

Article 38.23 prohibits any evidence obtained in violation of law from being admitted against an accused in the trial of a criminal case. TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005). Nevertheless, article 38.23(a) does not "confer automatic third party standing upon all persons accused of crimes, such that they may complain about the receipt of evidence which was obtained by violation of the rights of others, no matter how remote in interest from themselves." *Fuller v. State*, 829 S.W.2d 191, 202 (Tex. Crim. App. 1992); *see Chavez v. State*, 9 S.W.3d 817, 819 (Tex. Crim. App. 2000). The purposes underlying article 38.23(a) are the same as the purposes underlying the federal exclusionary rule: "to protect a suspect's privacy, property, and liberty rights against overzealous law enforcement," and the primary purpose "is to deter unlawful actions which violate the rights of criminal suspects in the acquisition of evidence for prosecution." *Wilson v. State*, 311 S.W.3d 452, 458–59 (Tex. Crim. App. 2010). "As such, both exclusionary rules are substantive in nature, as they provide a remedy of the violations of those rights." *Id.* at 459. Thus, although the plain language of the statute suggests "that evidence obtained in violation of *any* law must be

7

suppressed, . . . [a]rticle 38.23(a) may not be invoked for statutory violations unrelated to the purpose of the exclusionary rule or to the prevention of the illegal procurement of evidence of crime." *Id.*; *see also Watson v. State*, 10 S.W.3d 782, 784 (Tex. App.—Austin 2000, no pet.) (collecting cases wherein article 38.23(a)'s exclusionary rule was not applied to statutory violations and refusing to apply exclusionary rule to violation of prostitution statute).

Here, Palumbo's argument fails to take into account the purposes of article 38.23(a). Regardless of whether Officer Smith violated the law while conducting this undercover investigation,[1] he did not violate any constitutional or statutory right of Palumbo. *See Watson*, 10 S.W.3d at 784. Therefore, Palumbo lacks standing to assert a violation of article 38.23(a), and she could not have invoked article 38.23(a) in the trial court in an attempt to suppress Smith's testimony or the audio recording. *See Wilson*, 311 S.W.3d at 459; *Chavez*, 9 S.W.3d at 819; *Fuller*, 829 S.W.2d at 202; *Watson*, 10 S.W.3d at 784.

Because Palumbo could not invoke article 38.23(a) in this case, Palumbo's trial counsel did not render ineffective assistance by failing to attack the admissibility of Smith's testimony and the audio recording under article 38.23(a), the trial court did not commit fundamental error by admitting the evidence, and the

---

[1] We express no opinion regarding whether Officer Smith committed the offense of prostitution or whether a law enforcement officer commits such an offense if acting solely in the course of his or her official duties.

8

trial court did not err by omitting an article 38.23(a) instruction from the jury charge.

Accordingly, we overrule Palumbo's first three issues.

## Right to an Interpreter

In her fourth issue on appeal, Palumbo contends that the trial court erred by failing to *sua sponte* appoint an interpreter for her because the trial court was aware of her inability to understand English.

Under the Sixth Amendment to the United States Constitution, an interpreter must be provided to an accused who does not understand the English language. *See Garcia v. State*, 149 S.W.3d 135, 140–41 (Tex. Crim. App. 2004); *Miller v. State*, 177 S.W.3d 1, 5 (Tex. App.—Houston [1st Dist.] 2004, no pet.). An accused may, however, waive the right to an interpreter, so long as the waiver is knowing, intelligent, and voluntary. *See Garcia v. State*, 429 S.W.3d 604, 607–09 (Tex. Crim. App. 2014); *Garcia*, 149 S.W.3d at 144.

We review a trial court's decision regarding whether to appoint an interpreter for an abuse of discretion. *See Perez v. State*, No. 13-11-00366-CR, 2012 WL 1481535, at *2 (Tex. App.—Corpus Christi April 26, 2012, no pet.) (mem. op.); *Abdygapparova v. State*, 243 S.W.3d 191, 201 (Tex. App.—San Antonio 2007, pet. ref'd). And a "reviewing court will not conclude that a trial court abused its discretion by not appointing an interpreter when the record shows

9

the accused adequately understood English." *Perez*, 2012 WL 1481535, at *2; *see* *Abdygapparova*, 243 S.W.3d at 201–03.

Here, the record shows that the trial court was concerned about Palumbo's ability to understand English. But the trial court addressed this concern with Palumbo at trial, and the record contains evidence that Palumbo was capable of communicating in English. Palumbo's trial counsel informed the trial court that he asked Palumbo if she wanted an interpreter and she stated that she did not. Counsel further stated that Palumbo told him she understood what they had discussed, that he was comfortable that Palumbo understood everything he told her prior to trial, and that she appeared to understand everything that had happened at the trial. Palumbo was able to answer each of the questions posed to her, and, although she was informed that she could request clarification of any question she did not understand, she only requested clarification of one question posed to her, which she understood after the question was re-phrased. She testified that she has operated several businesses that employed numerous English-speaking employees. And, most importantly, she informed the trial court, when asked, that she was okay without an interpreter and that she had understood the other witnesses' testimony. Under these circumstances, we cannot conclude that the trial court acted arbitrarily or capriciously when it decided, after speaking with Palumbo on the record and

10

observing Palumbo during the trial, not to appoint an interpreter in this case. *See Abdygapparova*, 243 S.W.3d at 203.

Further, the record shows that Palumbo freely and knowingly waived her right to an interpreter. Palumbo's trial counsel discussed the possibility of getting an interpreter with her, but she told him she did not want an interpreter. Moreover, Palumbo informed the trial court that she could testify without an interpreter, that she understood English well enough to testify, and, when asked if she would prefer to wait for an interpreter or attempt to answer the questions posed to her without an interpreter, that she would try to answer the questions. Under these facts, the record reflects that Palumbo validly waived the right to an interpreter. *See Garcia*, 429 S.W.3d at 609.

Accordingly, we overrule Palumbo's fourth issue.

## Conclusion

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).

11